## 4729.  HARTFORD FIRE INSURANCE COMPANY *v.* WIMBISH.

1. Words used in a policy of insurance are to be given their ordinary and usual signification, unless the context requires a different construction.
2. Where a policy of insurance indemnifies an owner of an automobile against loss or damage occasioned "by theft, robbery, or pilferage," the owner can not under this clause of the policy recover for damage to a machine which had been taken by another and used without the consent of the owner, but without any intent to steal.
3. At common law, and under the statutes of this State, "theft" is synonymous with "larceny." The word "robbery" as used in the contract sued on, should be given the meaning set forth in the Penal Code of this State. "Pilferage" is petty larceny. The intent to steal is a necessary ingredient in all three offenses.

DECIDED MAY 20, 1913.

Action on insurance policy; from city court of Savannah—Judge Davis Freeman. January 27, 1913.

*Adams & Adams,* for plaintiff in error.

*Shelby Myrick, Osborne & Lawrence,* contra.

POTTLE, J. The plaintiff sued the insurance company for damages to an automobile. The clause in the policy upon which the plaintiff relies for a recovery provides that the defendant insures the plaintiff, "against actual loss or damage if amounting to $25, on each occasion, by theft, robbery, or pilferage, by persons other than those in the employment, service, or household of the insured." A demurrer to the petition as amended was overruled, and a verdict was returned in favor of the plaintiff. The defendant excepted to the overruling of the demurrer and to the refusal to grant a new trial. From the evidence it appears that on July 4, 1912, the plaintiff employed one Harris to clean out the muffler of an automobile. Harris began work on the machine about eleven o'clock, and stated that he would have the work completed by four o'clock. Harris was seen driving the car down one of the public streets of Savannah. The plaintiff did not know that he had taken the car, and gave him no permission to do so. The plaintiff's husband found the car about 10 o'clock at night, about three miles from the city, up against a tree and in a badly damaged condition. One of the witnesses testified, that immediately after the automobile was wrecked in the afternoon of July 4, he came upon the scene; that the car was going at a terriffic rate of speed when it

struck the tree; that there were four occupants in the car, three males and one female; that the car was badly broken up and the occupants were badly hurt; that the driver had evidently been drinking, and the other two male occupants of the car seemed to have been drinking also; and that the car was on the White Bluff road, headed for Savannah. The court charged the jury, in substance, that, if the automobile was taken by Harris without the consent or permission of the owner, and, while in the possession of Harris, was damaged, the plaintiff would have a right to recover, provided Harris was not in the employment of the owner at the time. The jury were further instructed that the word "theft," as used in the contract, was not to be given its usual or technical meaning; and the court declined to charge, upon request, that, before the plaintiff would be entitled to recover, it must appear that Harris intended to steal the machine, and that if he took the car out for a ride, intending to return it, the plaintiff could not recover.

In construing a contract the general rule is that words are to be given their usual and ordinary meaning, unless the context requires a different construction. There is nothing in the policy sued on in the present case which would justify the court in giving to the words employed, in the clause upon which the plaintiff relies for a recovery, a meaning different from that in which the words are ordinarily understood. It is argued that the word "theft," as used in this policy, means any unlawful taking; that is to say, a taking without the consent of the owner. But in our law the word "theft" has a well-defined meaning. Theft is synonymous with larceny. It is merely a popular name for larceny. See 4 Blackstone's Commentaries, 229. This is also true in our Penal Code. For instance, in section 151 it is declared that "larceny, or theft," consists of: "1. Simple theft or larceny. 2. Theft or larceny from the person. 3. Theft or larceny from the house. 4. Theft or larceny after a trust or confidence has been delegated or reposed." In section 152 "simple theft, or larceny," is defined; and in section 172 "theft or larceny from the person" is defined. It is apparent, therefore, that the word "theft" should be given the same meaning as the word larceny, unless there is something in the contract which requires a different construction. "Robbery," of course, has a well-defined technical meaning, and denotes a crime containing all the elements of that offense. Penal Code, § 148. The word

"pilfer" means to steal, and to charge another with "pilferage" is the same thing as to charge him with stealing. Becket *v.* Sterrett, 4 Blackf. 499, 500. "Pilferage" is but petty larceny. One can not be convicted of either theft, robbery, or pilferage, unless he had the intent to steal. And we know of no authority for giving any different meaning to these words in a contract of insurance wherein it is stipulated that the company will be liable for loss or damage to an automobile, resulting from "theft, robbery, or pilferage."

Under this contract, if the thief carries away a machine with intent to steal it, and it is never recovered, and loss occurs, the owner may recover the full value of the automobile. If the thief be apprehended and the machine recovered, then the owner is entitled to recover for whatever damage has been done the machine, if it exceeds $25. But in both cases it must appear that the person taking the machine intended to steal it. If he had the animus revertendi, he is not guilty of theft, or robbery, or pilferage, even though he took the machine without the owner's consent. This may be a hard contract, but the parties have made it themselves, and there is no reason in law or morals why they should not be bound by it. The plaintiff was not obliged to accept the policy in the form in which it was offered; she might possibly have procured more liberal insurance elsewhere; but in any event the courts are not at liberty to extend by construction the plain and well-understood meaning of language used in the contract. There were some circumstances in the evidence which seemed to indicate that Harris did not intend to steal the machine. He took it out of the owner's garage in the daytime and drove it along a public thoroughfare leading from the city of Savannah, much frequented by the traveling public. He was seen going in the direction of a public pleasure resort, and, when the accident occurred, was returning to the city late in the afternoon with several other persons in the car. All these circumstances tended to negative the intent to steal which ordinarily arises from an unlawful taking. The fact that Harris was guilty of a misdemeanor under section 9 of the "automobile act" of 1910 (Ga. Laws 1910, p. 93) would not authorize a recovery by the plaintiff; for under that act it is a misdemeanor to use an automobile of another without his consent, even where there is no intent to steal. The question of an intent to steal should

have been submitted to the jury, and it was error to charge, in effect, that the owner would be entitled to recover under the policy if the machine was unlawfully taken by Harris and without any intent to steal it. The evidence authorized a finding that Harris was not in the employment of the owner at the time he took the machine, the work which he had been employed to do having been finished. The demurrer to the petition as amended was properly overruled.     *Judgment affirmed in part, and in part reversed.*