KANSAS CITY REGAL AUTO COMPANY, Respondent, v. OLD COLONY INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, February 15, 1915.

INSURANCE: Automobiles: Robbery. The plaintiff sued on an insurance policy issued by defendant to recover the value of an automobile, which was stolen while in the control of one of its salesman. The salesman took the car out in the evening with the permission of the agent, so that he might demonstrate it to two of his out-of-town customers. He left the car standing in front of a hotel for twenty minutes and when he came back the car was gone. There was evidence that the salesman was a heavy drinker and had been drinking on that evening. The defendant offered no evidence. The court gave a peremptory instruction to return a verdict for plaintiff. *Held*, that where plaintiff's own evidence presents vital issues of fact the court cannot properly dispose of such issues as though they were mat-

ters of law. The credibility of the salesman and the bona
fides of his conduct with reference to the theft of the car were
issues of fact which the jury should have been allowed to de-
termine.

Appeal from Jackson Circuit Court.—*Hon. Frank G.
Johnson,* Judge.

REVERSED AND REMANDED.

*Yates & Mastin* for appellant.

*Lathrop, Morrow, Fox & Moore* for respondent.

JOHNSON, J.—This is an action on a policy of
insurance issued by defendant to plaintiff by the terms
of which defendant insured plaintiff in the sum of
$1000 against loss by fire on a certain automobile owned
by plaintiff and also stipulated that the policy would
"cover loss or damage in excess of $25 on each occa-
sion, by theft, robbery, or pilferage by persons other
than those in the employment, service or household
of the assured."

The petition alleges that on April 22, 1910, while
the policy was in force the automobile "was stolen or
taken from plaintiff by theft or robbery by a person or
persons other than those in the employment, service
or household of plaintiff and that the said automobile
has never been recovered by plaintiff and that the same
hereby became and is a total loss to plaintiff," etc.

The answer admits the policy was in force at the
time of the alleged loss, but denies the other allega-
tions of the petition and pleads that plaintiff failed to
make proofs of loss in compliance with the terms of
the policy. The reply "denies each and every allega-
tion of new matter in said amended anwser contained"
and alleges a waiver by defendant of proofs of loss.

At the close of the evidence offered by plaintiff the
court refused a peremptory instruction asked by de-

fendant and at the request of plaintiff instructed the jury "that the plaintiff is entitled to recover." In obedience to this instruction the jury returned a verdict for plaintiff in the sum of $1100. Defendant appealed.

Defendant offered no evidence at the trial and that introduced by plaintiff which bears on the questions discussed in the briefs is as follows: At the time of the alleged loss plaintiff was engaged at Kansas City in the business of selling automobiles manufactured by the Regal Motor Car Company of Detroit. The car in question was new but had been used two or three weeks by the salesmen of plaintiff to demonstrate its merits to prospective buyers and was being so used at the time of the alleged theft.

Plaintiff would not allow its salesman to take the car out after six o'clock p. m. without special permission, but gave such permission to one of its salesmen who represented that an acquaintance of his who lived in Atchison, Kansas, had come to Kansas City with his wife for the purpose of buying an automobile and would like to test the Regal car. The salesman met the couple at the Baltimore Hotel where they had engaged a room and took them in the car to his hotel where they had dinner. Then he took them for a ride over the city but the weather grew inclement and they returned to the Baltimore Hotel. The salesman left the car in a line of cars under the supervision of an employee of the hotel and went inside with his companions. After remaining there fifteen or twenty minutes he took temporary leave of them to return the car to plaintiff's garage. Going to the place where he had left it, which was across the street from the hotel, he found it was gone. He inquired at once of the hotel employee if he had seen anyone take it and receiving a negative answer, went into the hotel and told his companions of its disappearance. Then he telephoned the police department. He testified that he never saw

Auto Co. v. Insurance Co.  .

the car again and had no knowledge of what had become of it.  He reported the loss to the manager of plaintiff early the next morning, being unable to find him before that time.  On cross-examination he admitted that he was a heavy drinker of intoxicating liquors and that he and his companions had been drinking freely during the evening, but denied that he was under the influence of liquor.  He was inclined to boast of his capacity for drink speaking of it as "unlimited," and said he could take fifty drinks without showing any disturbing effects.  The following extracts from his cross-examination afford a fair conception of his condition that evening, as well as of the nature of the relations between him and his companions.

"Q.  Were you short of money that evening?  A. I am usually short of money all the time.

"Q.  Didn't you want to get some ready cash?  A. No.

"Q.  Did you make an agreement to sell this machine?  A. No, sir.

"Q.  Are you positive now that you did not?  A. I know that I did not.

"Q.  Didn't you receive some money that evening for the machine?  A. No, sir.

"Q.  Were you in such a condition that you can now state whether you did receive any money or make any arrangements to sell that car that night?  A. I can state that I had no proposition offered to me on account of the purchase of the car, other than a conversation with Mr. Drury.

"Q.  Can you now remember, after remembering all these other details so well, how many drinks you had that night?  A. I could not remember that.

"Q.  Were you drinking that night?  A. I generally drink beer.

"Q.  What did you drink that night.  You did not drink only beer that night did you?  A. I don't remember just the drinks.  Possibly a 'high ball' or two.

"Q. You don't remember how many you had between six and ten o'clock? A. I don't think we had any between six and ten o'clock.

"Q. How many had you taken before six o'clock? A. Possibly a couple of drinks.

"Q. Did you not state before that you had some drinks after six o'clock during the dinner? A. Yes. No, I did not. I don't know whether we did or not.

"Q. The record shows whether you did or did not?

Mr. Emmons: He said he didn't know whether he did or not.

"A. I don't know anything about it.

"Q. The record shows that? A. Let it go that way. We had two or three drinks.

"Q. How many drinks did you have before six o'clock that day? A. I don't just remember that.

. . . . . . .

"Q. Did you have any drinks that night at the Baltimore Hotel? A. Yes.

"Q. How many drinks did you have there? A. Had one drink after we returned with the car. Had one drink then I went down to get the car.

. . . . . . .

"Q. How often did you see Mr. and Mrs. Drury? A. They generally came to Kansas City about once a month.

"Q. Each time did you go out and celebrate with them, eat dinner and have some drinks? A. Yes, sir.

. . . . . .

"Q. Mr. Crandall, how many drinks would you consider a man could take and still be normal?

"Q. I insist upon an answer. A. I feel that I can take a great many more drinks than a great many other people can, and still be normal. I should judge that I could take fifty drinks and still be normal.

Re-direct Examination.

"Q. Without waiving my objection, I will ask a question or two. On that evening had you any such a number of drinks as that between six and ten o'clock? A. No, sir; not to exceed three or four or five."

About a month after the loss the salesman left the employment of plaintiff.

The manager of plaintiff testified in substance that as soon as the loss was reported to him he telephoned the police department and defendant's agent in Kansas City that the car had been stolen the night before from the line of automobiles in front of the Baltimore Hotel; that the solicitor of defendant called and discussed the loss with him; that later he went to defendant's office and was asked to sign proofs of loss which he did without reading them, on the statement of the agent of defendant who prepared and presented them to him, that they were proofs of loss and that the car was never returned to plaintiff.

We think the court did not err in overruling the demurrer to the evidence offered by defendant. The burden was upon plaintiff to show that a loss had occurred within the definition of that term in the policy i. e., that the automobile was stolen by some person or persons "other than those in the employment, service or household of the assured," but these facts could be established by circumstantial evidence and this being a civil suit plaintiff was not required to prove them beyond a reasonable doubt. The facts and circumstances disclosed in the evidence of plaintiff will support a reasonable inference that the salesman, in good faith, left the car in front of the hotel and that some person or persons not in the employment of plaintiff or in any sort of relationship to plaintiff, its officers or agents, stole the car and made off with it.

The evidence must be held sufficient to take to the jury the issue of whether or not the car was stolen.

And as to the proofs of loss the evidence tends to show not only that proofs of loss were made and delivered to defendant on the day following the loss, but that thereafter defendant so conducted itself with reference to the loss and plaintiff's demand, as to waive formal proofs. We have not recited the facts bearing on the subject of waiver for the reason that the evidence relating to the making and delivery of formal proofs is undisputed and is so clear and convincing that it affords no room for a reasonable difference of opinion, and the court did not err on that score in peremptorily directing a verdict for plaintiff. The demurrer to the evidence offered by defendant was properly overruled.

But we are of opinion that the court erred in holding as a matter of law that the car had been stolen by someone not in the service of plaintiff. The evidence of theft is purely circumstantial and the fact that someone in the service of plaintiff had no guilty participation in the disappearance of the car—a fact the contract included among the elemental facts of a good cause of action for theft which plaintiff must establish by proof—does not appear to be indisputably established. The jury were entitled to infer from all the evidence that the salesman acted in bad faith with his employer in obtaining permission to use the car on the representation that he intended using it in his employer's business when, in truth, he wanted to use it for the pleasure of his friends and that despite his denials, the salesman was privy to the disappearance of the car. His description of his habits and of his conduct that night does not impress us favorably. He was drinking heavily, was in need of money, and there is reasonable ground to believe that he did not act with diligence for the recapture of the car. He telephoned the police department but had forgotten the number of the car and the police could do nothing until the next morning when they obtained the number

from the manager. He did not report the loss to the manager, until the next morning. His reason for not doing so, as stated by him, is that "I could not get hold of him. He was not at home. I went out to look for him around some of the cafes, did not know where he was." The result was that the thief was given a start of ten or twelve hours before any effort was put forth to follow or apprehend him. Such circumstances do not warrant the conclusion, as one about which reasonable minds could not differ, that the fact of an actionable theft is indisputably established. The triers of fact might infer from them that the salesman was innocent of the crime, but the opposite inference that he was privy to the taking of the car has abundant support in the evidence and is one the jury was entitled to draw from all the facts and circumstances in proof.

The failure of defendant to offer any evidence has moved plaintiff to invoke as pertinent the rule stated in the following quotation from May v. Crawford, 150 Mo. l. c. 527: "If there had been any conflict in the testimony as to the breach, it would have been proper to submit it to the jury as a question of fact, but here there was no conflict of testimony, no countervailing evidence, and no impeachment of any witnesses. The facts stood admitted. Their legal effect alone remained, and that was a question for the court and not for the jury."

Following that decision, we held in Morris v. Kansas City, 117 Mo. App. 298, that the trial court "may on uncontradicted evidence direct a verdict on the issue."

Speaking for myself, I think it is doubtful if that rule ever was intended to aid a plaintiff who must carry to the end of the case the burden of establishing by proof the constitutive facts of his cause of action, but we need not express our opinion on that subject here, since it is plain that the rule has no application to cases such as the present where the evidence of the

plaintiff, though not met by opposing evidence offered by the defendant, does not unequivocally and indisputably establish the ultimate facts of the pleaded cause, but affords reasonable ground for the conclusion, as one of fact, that he has failed to sustain his burden of proof. Where the plaintiff's own evidence presents vital issues of fact, the court cannot properly dispose of such issues as though they were matters of law.

The credibility of the salesman and the *bona fides* of his conduct with reference to the theft of the car were issues of fact which the jury should have been allowed to determine.

It follows that the court erred in peremptorily instructing the jury for plaintiff. The judgment is reversed and the cause remanded. All concur.