FREDERICK R. VAN VECHTEN, Respondent, *v.* AMERICAN EAGLE FIRE INSURANCE COMPANY OF NEW YORK, Appellant.

Fourth Department, June 29, 1923.

Insurance — automobile theft insurance — policy excepted theft by person in service or employment of insured — plaintiff left automobile with garage owner for repairs — garage owner used automobile without plaintiff's knowledge or consent and damaged it in accident — garage owner was not in service or employment of plaintiff — act of garage owner was theft within meaning of policy.

In an action on an automobile theft insurance policy it appeared that the policy covered " theft. robbery or pilferage excepting by any person    *    *    *    in the assured's service or employment;" that the plaintiff left his automobile with a garage owner with directions to make certain specified repairs; that the automobile was seriously damaged while being driven by the garage owner for his' own purposes and without the knowledge or consent of the plaintiff.

*Held*, that the garage owner was not in the employ of the plaintiff as that term is used in the insurance policy, and that his act in taking the automobile without the knowledge or consent of the plaintiff and driving it for his own purposes constituted a theft within the meaning of that term as it is used in the insurance policy.

SEARS. J.. and HUBBS. P. J.. dissent, with opinion.

APPEAL by the defendant, American Eagle Fire Insurance Company of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Herkimer on the 14th day of June, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 16th day of June, 1921, denying defendant's motion for a new trial made upon the minutes.

*Edward M. Brown*, for the appellant.

*Bronner & Ward* [*James C. Bronner* of counsel], for the respondent.

CLARK, J.:

On the 11th day of May, 1920, on application of plaintiff, defendant issued to him a policy insuring plaintiff against certain perils to his automobile, including " theft, robbery or pilferage, excepting by any person or persons in the assured's household or in the assured's service or employment, whether the theft, robbery or pilferage occur during the hours of such service or employment or not." This policy did not expire until May 11, 1921, at noon.

On or about the 15th day of July, 1920, plaintiff was at Dobbs Ferry, N. Y., on a visit. One Robert J. Wilson conducts a garage and repair shop at Dobbs Ferry, and on said date plaintiff conversed with said Wilson about making certain minor repairs on his automobile, specifying particularly that he should repair a leak in the motor to prevent its throwing oil, reline the foot brake, clean carbon from the motor, and tighten the nuts and bolts on the car.

About July 19, 1920, Wilson took the car from a garage in Dobbs Ferry where plaintiff had left it, and took it to his own garage for the purpose of making these repairs. Plaintiff in the meantime had returned to his home in Little Falls.

On the evening of July twentieth, about nine o'clock, Wilson without authority from the plaintiff, took plaintiff's automobile and drove to Yonkers, remaining in that city practically all night, and on his return trip early the following morning, and about ten minutes after four, he ran into a telephone pole, smashing the pole and seriously damaging plaintiff's car.

The jury could find from the evidence that up to this time Wilson had not made the repairs on the car that he had been ordered to do; they could also find that he took this car for his own uses and purposes.

The jury was justified in finding from the evidence that Wilson went on this ride for his own pleasure, and that after spending a night in Yonkers with various parties, he met with the accident on his homeward journey, and that the taking of the car was not only without the knowledge and consent of plaintiff, but was not for any use or purpose connected with plaintiff's business of repairing his car.

Wilson was not in the employ of plaintiff as that term is ordinarily used and understood. He was not in his regular employment as chauffeur or servant, nor was he a member of plaintiff's household. The car had been left with Wilson at his garage for him to make certain specified repairs. It was not at all necessary for the car to be taken out of the garage in order to make such repairs, and the findings of the jury on all disputed questions of fact were

amply supported by the evidence. It is the claim of plaintiff that when Wilson took the car in the manner described, he stole it and that is disputed by defendant.

Section 1293-a of the Penal Law (added by Laws of 1909, chap. 514, as amd. by Laws of 1910, chap. 621) provides as follows: "Any chauffeur or other person who without the consent of the owner shall take, use, operate or remove, or cause to be taken, used, operated or removed from a garage, stable, or other building or place or from any place or locality on a private or public highway, park, parkway, street, lot, field, inclosure or space an automobile or motor vehicle, and operate or drive or cause the same to be operated or driven for his own profit, use or purpose, steals the same and is guilty of larceny and shall be punishable accordingly."

This taking of plaintiff's car by Wilson in the manner described was a clear larceny, not only under the statute quoted, but, under the circumstances, it could well be found that he was guilty of common-law larceny, for his felonious intent could be inferred from what he did.

The plaintiff was not required to show by direct evidence the felonious taking of his automobile. It was sufficient if he showed circumstances which would justify the inference not only that the property was taken in violation of the statute, but that it was feloniously taken. The evidence in this case would justify such inference. (*Haas* v. *Fidelity & Deposit Co.*, 97 Misc. Rep. 4; *Callahan* v. *London & Lancashire Fire Ins. Co., Ltd.*, 98 id. 589; *Neal, Clark & Neal Co.* v. *Liverpool & London & Globe Ins. Co., Ltd.*, 178 App. Div. 730.)

The policy issued to plaintiff by defendant covered loss by theft, robbery or pilferage. This car having been stolen by Wilson under the circumstances as shown in the record, it seems to me the transaction comes squarely within the provisions of the policy, and that it covers plaintiff's loss.

The judgment should be affirmed, with costs.

All concur, DAVIS, J., in a separate opinion, except HUBBS, P. J., and SEARS, J., who dissent in an opinion by SEARS, J.

DAVIS, J. (concurring):

One who has property in his possession, custody or control as a bailee, who appropriates the same to his own use, steals such property and is guilty of larceny. (Penal Law, § 1290, subd. 2.) Section 1293-a of the Penal Law was enacted, I think, to obviate difficulties in making proof that the property was stolen where an automobile was taken by a person who ordinarily had some license or authority to take and use it, but who would on certain occasions

take it for his own profit, use or purpose. The crime is the same as in the general definition of larceny, to wit, " stealing."

The defendant is a New York corporation. Presumptively it knew the existing law of this State on the subject of stealing when it wrote its policy and issued it to insure plaintiff against theft as that term was legally understood in this State. The language used in the policy is " theft, robbery or pilferage," and the exceptions for the protection of the insurer are stated in definite language.

When a policy is written by an insurer and it has the choice of language in stating the contract, it must be held to the rule common in construing all contracts by which the terms thereof are construed strictly against the person whose language is used in expressing it. (*Schumacher* v. *Great Eastern C. & I. Co.*, 197 N. Y. 58; *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287; *Bankers' Mutual Casualty Co.* v. *State Bank*, 150 Fed. Rep. 78.)

A thief is one who steals, and a theft is the act of stealing. (Webster's New Int. Dict.) It is a wider term than larceny and includes other forms of wrongful deprivation of property of another. (Encyclopædia Britannica.)

A person who without the consent of the owner takes and uses an automobile, steals the same and is guilty of larceny and shall be punished accordingly. (Penal Law, § 1293-a.)

The question submitted to the jury was whether Wilson, who had the car in his possession for the purpose of repairing it, took the car to test it or for a legitimate errand; or whether he took it for his own use and profit without lawful right. The jury found that the latter was his purpose and that he stole the car. If the intent with which he took it is material, the presumption of wrongful intent arises from the unlawful act itself and from the circumstances proved. (*People* v. *Fish*, 125 N. Y. 136.) When with a knowledge of all the facts one deliberately violates a positive law which he is presumed to know, he cannot be excused on the ground that he intended no wrong. (*Wayman* v. *Commonwealth*, 14 Bush [Ky.], 466; 16 C. J. 77.)

The plaintiff's automobile was stolen. Such a theft was within the terms of the policy. Authorities from other jurisdictions construing similar policies are of little value, for the statutes defining larceny are different and there are no similar statutes in such States as the one here offended.

SEARS, J. (dissenting):

The plaintiff was the holder of a policy of insurance issued by the defendant, by the terms of which plaintiff's automobile was insured against certain perils, among them being " theft, robbery

or pilferage, excepting by any person or persons in the assured's household or in the assured's service or employment whether the theft, robbery or pilferage occur during the hours of such service or employment or not and excepting also the wrongful conversion or secretion by a mortgagor \* \* \*."

During the life of the policy the plaintiff was visiting in Dobbs Ferry, N. Y., and intrusted his automobile to one Wilson to make certain repairs upon the car. Wilson conducted a garage and repair shop in that place. While Wilson was thus lawfully in possession of the plaintiff's car, he took it from his garage one evening without authority from the plaintiff and drove it to Yonkers, N. Y., a distance of more than ten miles, remained there most of the night, and on his return trip to Dobbs Ferry early the following morning at about ten minutes after four o'clock, ran the plaintiff's automobile into a telephone pole, causing the car serious damage. A recovery upon the policy has been allowed on the basis that Wilson's action constituted a " theft " of the car within the meaning of the policy. As the plaintiff after this event retook possession of the car, the amount of the recovery in the action was limited to the amount of the damages.

The plaintiff's contention that there was a loss insured against, consisting of a theft of the car, is based upon the theory that the taking of the car by Wilson for his own purpose without the authority or consent of the plaintiff was a statutory larceny under the terms of section 1293-a of the Penal Law, which at the time of the transaction read as follows: "Any chauffeur or other person who without the consent of the owner shall take, use, operate or remove, or cause to be taken, used, operated or removed from a garage, stable, or other building or place or from any place or locality on a private or public highway, park, parkway, street, lot, field, inclosure or space an automobile or motor vehicle, and operate or drive or cause the same to be operated or driven for his own profit, use or purpose, steals the same and is guilty of larceny and shall be punishable accordingly."

There was no contention upon the trial that Wilson took the car with felonious intent, either to convert the car permanently to his own use or to deprive the owner permanently of its use; in other words, the case was barren of proof of an *animus furandi*. The question is presented whether the word " theft " in the policy is broad enough to include a statutory larceny from which the fundamental element of intent necessary at the common law both in larceny and in embezzlement is absent.

Theft is defined both in the books of law and in the ordinary dictionaries as in general an equivalent of the word " larceny."

In *People* v. *Donohue* (84 N. Y. 438) Judge Finch discusses the meaning of the word as follows: " It is at first questioned whether ' theft ' is a crime either at common law or under the statutes of Connecticut. The criticism is upon the word. It is claimed not to be the precise equivalent of ' larceny ' and not to be defined as a crime by the statutes of Connecticut. We do not think either suggestion is well founded. Bouvier defines ' theft ' as ' a popular term for larceny.' Blackstone uses the two words synonymously and as descriptive of one and the same offense. He defines ' larceny or theft.' (Vol. 4, p. 229.) He proceeds to ' examine the nature of theft or larceny.' (Id. 230.) He speaks of a ' prosecution for theft.' (Id. 235.) And while discussing the punishment of larceny relates that ' our ancient Saxon laws [nominally] punished theft with death if above the value of twelve pence.' (Id. 237.) In *American Ins. Co.* v. *Bryan* (26 Wend. 563) the meaning of the words ' thieves ' and ' theft ' came under discussion, and it was said of the latter that its ' primary meaning, which is now the ordinary one, is that of secret stealing or simple larceny.' The statutes of Connecticut equally recognize theft as a crime. Thus it is provided that ' when *theft* shall be committed in one county and the property *stolen* shall be carried into another county, the offender may be tried in either county.' (Conn. Gen. Stat. 527 [537], 538.) And burglary is defined to be a breaking and entering ' with intent to commit *theft*,' etc. (Id. 503.) It is quite evident that, both at common law and under the statutes of Connecticut, theft is recognized as a crime, and is synonymous with larceny    *    *    *."

In 38 Cyc. 272, " theft " is variously defined as follows: "A popular name for larceny; taking property of another from the possession of the owner with intent to defraud; the felonious taking and carrying away of the personal property of another with intent to convert it to the use of the taker without the consent of the owner; the fraudulent taking of property, with intent to deprive the owner of the value of the same and to appropriate it to the use of the person taking it; the fraudulent taking of personal property from another with intent to appropriate the same to the taker's own use."

In 28 American and English Encyclopædia of Law (2d ed.), 126, " theft " is said to be synonymous with " larceny."

Black's Law Dictionary under " theft " after quoting a definition from Jacobs' Law Dictionary to the effect that " theft " is " an unlawful, felonious taking away of another man's movable and personal goods against the will of the owner," adds the following: " Theft is the fraudulent taking of corporate personal property belonging to another, from his possession, or from the possession of some person holding the same for him, without his consent, with

intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking."

In Stroud's Judicial Dictionary, under the word " theft," the author says: " Taking must be *animus furandi*, or, as the civil law expresses it, *lucri causa*."

Likewise, in the Century Dictionary " theft " is defined as the act of stealing; in law, larceny.

In the Standard Dictionary " theft " is defined as an act of thieving, stealing; in Webster's International Dictionary " theft " is defined as follows: "Act of stealing; specifically the felonious taking of, and removing of personal property with the intent to deprive the rightful owner of it; larceny."

The Oxford English Dictionary defines " theft " thus: " The act of a thief; the felonious taking away of the goods of another; larceny."

The Encyclopedia Americana says: " Theft is a term sometimes used as synonymous with larceny, although it is less technical and a wider term, and signifies the secret and felonious abstraction of the property of another with the intention of converting it to the taker's use, and without the consent of the owner."

In all the various definitions of larceny given in the dictionaries and encyclopedias, the intent either to appropriate permanently to one's own use or to deprive the owner permanently of his property is an essential of the definition.

In the absence of the statute quoted above (Penal Law, § 1293-a) Wilson's act would not have amounted to larceny and certainly would not have come within the terms of the policy. (*Phœnix Insurance Co. of London* v. *Eppstein*, 73 Fla. 991; *Valley Mercantile Co.* v. *St. Paul Fire & Marine Ins. Co.*, 49 Mont. 430; *Hartford Fire Ins. Co.* v. *Wimbish*, 12 Ga. App. 712; *Michigan Commercial Ins. Co.* v. *Wills*, 57 Ind. App. 256; *McCourt* v. *People*, 64 N. Y. 583.)

Although this policy was issued to a resident of New York by a New York company and the transaction out of which the plaintiff's claim arose occurred in New York, the policy made no reference to the local statute, nor did it define the perils insured against with technical precision, but use was made of popular terms describing various forms of larceny.

Pilferage refers to thieving of articles of small value, petit larceny. Robbery has a more precise content, and " theft " is a common word of broad meaning equivalent to " stealing."

The policy contained no limitation requiring the insured to keep his automobile in this State. The peril insured against might arise in other jurisdictions. Under the circumstances the word " theft " must be given the ordinary meaning such as the

dictionaries give to it, unaffected by the change in the statute law of this jurisdiction. In the absence of felonious intent on the part of Wilson, his act was not a risk insured against.

In *Delafield* v. *London & Lancashire Fire Ins. Co., Ltd.* (177 App. Div. 477) the court went even further than we are required to go in this case to sustain the defendant's contention. It was there held that the word " theft " in such a policy as is involved here did not include a transaction amounting to common-law larceny by trick and device. Mr. Justice VERNON M. DAVIS, writing in that case, said, referring to the complaint: " This is an allegation of common-law larceny by trick and device, in which plaintiff parted with possession as a result of the deception, but not with his title. While this policy insures against ' theft,' it seems clear that it was not the intention of the parties to the contract of insurance to insure against larceny by trick and device; that is theft, the commission of which involves, as an essential element, the deception of the insured, resulting in a surrender of the possession of his property. The term ' theft,' as used in this policy, does not include all forms of larceny recognized by law. It does not include a larceny perpetrated as this was under the form and guise of a business transaction conducted by the insured himself."

For these reasons the defendant's motion for a nonsuit should have been granted.

The judgment and order should, therefore, be reversed upon the law and a new trial granted, with costs to the appellant to abide the event.

HUBBS, P. J., concurs.

Judgment and order affirmed, with costs.