THE GREAT AMERICAN MUTUAL INDEMNITY CO. *v.*
MEYER.

*Automobile insurance—"Theft" construed—Insurer liable where
machine embezzled, when—Failure by bailee to return au-
tomobile.*

1. The word theft is a broader term than larceny and may
   include not only an unlawful taking of property but other
   unlawful deprivations thereof.

2. Where an insurance policy purports to indemnify an auto-
   mobile owner against loss by theft, and contains a clause
   excepting the insurer from liability in case the property
   is wrongfully converted by a mortgagor or vendee in pos-
   session, the insurer is liable for the embezzlement of an
   insured automobile by one who is not a mortgagor or
   vendee in possession.

3. When the bailee of an automobile fails to deliver it at a
   designated place, and neither the bailee nor automobile
   is ever seen or heard of again by the owner after dili-
   gent search, a jury is warranted in the inference that the
   automobile has been embezzled.

(Decided January 7, 1924.)

ERROR: Court of Appeals for Hamilton county.

*Mr. W. W. Symmes,* for plaintiff in error.
*Messrs. Buchwalter, Headley & Smith,* for de-
fendant in error.

MAUCK, J.  Meyer was insured by the Great
American Mutual Indemnity Company against loss
of or damage to his automobile by "Theft, rob-
bery or pilferage excepting by any person or per-
sons in the assured's household or in the assured's
service or employment, whether the theft, robbery
or pilferage occur during the hours of such serv-

ice or employment or not, and excepting also the wrongful conversion or secretion by a mortgagor or vendee in possession under mortgage, conditional sale or lease agreement, and excepting any case other than in case of total loss of the automobile described herein, the theft, robbery or pilferage of tools and repair equipment.''

Judgment was recovered in the Municipal Court and that judgment was affirmed in the Common Pleas. Error is prosecuted to this court, where it is claimed that the undisputed facts pleaded and proved do not make a case under the clause of the policy quoted. The plaintiff pleaded:

''That on or about the 15th day of July, 1922, while said policy was in full force and effect, the automobile insured thereunder was in the temporary custody and possession of one Elmer Stenson in the city of Cleveland, Ohio, and that on or about said date, said Elmer Stenson disappeared with said automobile and has not been heard of since.''

The testimony sustained this averment. It was shown that the plaintiff's son had custody of the car and that he and one Stenson were using the machine in selling some specialty in and about Cleveland; that the son, because he had the machine for that service, had been engaged by Stenson. Young Meyer had been suddenly called to his home at Cincinnati. Together with Stenson he went to the Cleveland depot in the car. Young Meyer then left the car in Stenson's possession and told him to take it back to its parking place, which was a yard in the rear of their rooming house. When the young man returned to Cleveland ''about a week or so later'' he was unable to

find Stenson or the car. Whether Stenson ever returned the car to the parking place is not shown.

The first question is whether these facts make a case under the clause in the policy covering loss by "theft, robbery or pilferage." If the facts fit either of the terms mentioned it must be "theft," not "robbery" or "pilferage." The plaintiff in error claims that the term "theft" covers a larcenous taking and nothing else. There is much authority for this view. Indeed, the great weight of authority both direct and obiter sustains the view that the term theft is limited in its application to cases of larceny. This view is nowhere more clearly stated than in *Gunn* v. *Globe & Rutgers Fire Ins. Co.*, 24 Ga. App., 615, 101 S. E., 691. In that case the Court of Appeals of Georgia had under consideration a policy of insurance against "theft, robbery or pilferage," where the insured had turned over to one Miller her automobile for repairs. Miller fraudulently converted the machine to his own use:

"*Held*, under the terms of such a policy written to indemnify an owner against loss by 'theft, robbery or pilferage,' the usual and ordinary meaning of the words, involving the wrongful and fraudulent taking and carrying away of the article stolen, should have application, and the reasonable intention of the contract should not be extended to cover the fraudulent conversion by a bailee of the property so intrusted. The true and manifest intent and spirit of the contract should not be so technically construed as to require that it partake of the nature of a blanket fidelity bond guaranteeing the integrity of all such persons as may be intrusted by the owner with the posses-

sion and control of the article covered by the policy of insurance. See *Hartford Fire Ins. Co.* v. *Wimbish,* 12 Ga. App., 712, 78 S. E., 265; *Delafield* v. *London & Lancashire Fire Ins. Co.,* 177 App. Div., 477, 164 N. Y. Supp., 221; *Valley Mercantile Co.* v. *St. Paul Fire & Marine Ins. Co.,* 49 Mont., 430, 143 Pac., 559, L. R. A., 1915B, 327, Ann. Cas., 1916A, 1126; *People* v. *Cruger,* 102 N. Y., 510, 7 N. E., 555, 55 Am. Rep., 830; *Stuht* v. *Maryland Motor Car Ins. Co.,* 90 Wash., 576, 156 Pac., 557."

Some of the authorities thus cited in the Georgia opinion do not cover the question decided in that case, but the earlier Georgia case, decided in 1913 (*Hartford Fire Ins. Co.* v. *Wimbish,* 12 Ga. App., 712, 78 S. E., 265), to like effect, has been approved in a number of jurisdictions. *Michigan Commercial Ins. Co.* v. *Wills,* 57 Ind. App., 256, 106 N. E., 725; *Illinois Automobile Ins. Exchange* v. *Southern Motor Sales Co.,* 207 Ala., 265, 92 South., 429, 24 A. L. R., 734; *Phoenix Assurance Co.* v. *Eppstein,* 73 Fla., 991, 75 South., 537, L. R. A., 1917F, 540. The annotations to the last case, and those in 14 A. L. R., 215, and 24 A. L. R., 740, probably develop all of the important cases up to 1922 and indicate that in the majority of the states liability under the term theft is confined to cases of larceny.

That view, however, has no complete monopoly of authority. In *Federal Ins. Co.* v. *Hiter,* 164 Ky., 743, L. R. A., 1915E, 575, a policy against loss by "theft, robbery or pilferage" was under consideration, and that court held:

"Where an automobile is loaned for a specific purpose to one, who at the time intends to steal

it, and he takes it beyond the place where he was supposed to go and abandons the machine in a remote section of a distant state in a badly damaged condition, and does not notify the owner where the machine might be found, there is a conversion of the machine just as if he had actually sold the same and appropriated the proceeds.''

In the view hereinafter expressed it is important to be observed that this holding by the Kentucky court antedates the policy in suit by a period of seven years.

*Hill* v. *North River Ins. Co.*, 111 Kan., 225, 207 Pac., 205, 24 A. L. R., 736, was a case where the owner gave possession of an automobile to one Montgomery, who was representing himself to be Ben Cole, and from whom the owner was accepting a check purporting to be signed by Ben Cole, which check would have been good if signed by Cole. The machine was insured against ''theft, robbery or pilferage.'' It seems clear that there was here no criminal case of larceny. It was a case of obtaining property under false pretenses, or would be in Ohio. The Kansas court held the insurer liable, however, and quoted with approval from Bouvier's Law Dictionary, defining theft:

''A popular term for larceny. It is a wider term than larceny and includes other forms of wrongful deprivation of property of another.

''Acts constituting embezzlement or swindling may be properly so called.''

So while the Kansas court rules that Montgomery would necessarily have been prosecuted for obtaining personal property under false pretenses, rather than for larceny, it holds the facts to be of such larcenous nature as to create a cause

of action. This Kansas case is not referred to on the theory that it is directly in point in the instant case, but to illustrate that a case need not fall under the criminal statutes defining and denouncing larceny in order to be a case of theft. In our criminal code there is no such offense as theft. The codifiers have used it as a convenient generic term in arranging the various sections of the Code relating to larceny, pocket-picking, receiving stolen goods, etc. Embezzlement has not been placed by the codifiers as one of the crimes naturally falling under that designation. The holder of an insurance policy, however, is not familiar with the more or less artificial classification of crimes by the Codification Commission and the definition of theft by Blackstone, on the one hand, or the more liberal definition of Bouvier, on the other. If in paying for a policy against "theft" he gives any consideration to the term he has a right to believe that it has a wider import than larceny. The man in the street, unfamiliar with the intricacies of the criminal statutes, makes no moral or other distinction between the larcener and the embezzler. To him, the man who steals a horse is a thief; the cashier who appropriates the bank's funds is a thief; and the treasurer who converts the public money to his own use is a thief. Theft, as the word is commonly used, is a good strong word, big enough to cover a variety of rascalities. The fact is, however, that not only laymen but courts and commentators have given to this word a wider significance than larceny. The best that can be said of it is that when this policy was issued, although a numerical majority of the authorities held it

to mean larceny, others held it to include embezzlement and obtaining property under false pretenses. And all the litigation and discussion thereof demonstrated its ambiguity and its unfitness to clearly delimit the rights of the assured and the liability of the insurer.

The insurance company has, therefore, deliberately used a word of uncertain import. Whatever may have been the thought of the insured, the words employed were the result of careful consideration by the issuing company. A score of cases examined disclose that "theft, robbery and pilferage" occur and recur in the reported cases during the last ten years in as many different states. The company using this language in this state did so with the knowledge that it had but to substitute the definite word "larceny" for the indefinite word "theft" to clearly express the meaning now contended for. Having chosen the indefinite and ambiguous term it is now met with the salutary rule that where a term is susceptible of two constructions, one favorable to the insured and one favorable to the insurer, the one favorable to the insured will be adopted. *Mumaw* v. *Western & Southern Life Ins. Co.*, 97 Ohio St., 1.

Another factor in the construction of the instrument in question is the exception therein embodied. After providing for liability against "theft, robbery or pilferage" there is, among other exceptions, one reading, "excepting also the wrongful conversion or secretion by a mortgagor or vendee in possession under mortgage, conditional sale or lease agreement."

If the term theft is limited to a larcenous taking there is no occasion to employ the exception.

The wrongful conversion or secretion by a mortgagor of his machine, insured for the benefit of the mortgagee, could not in any way be construed to be larceny. The phrase quoted would be serviceable if, and only if, liability were to arise upon the embezzlement of the insured machine. The term of exclusion thus used indicates the sense in which the term fixing the liability was employed.

It accordingly follows that the embezzlement of the machine by Stenson would render the insurer liable.

It is, in the second place, contended that there is no evidence that Stenson feloniously converted the machine to his own use; that is to say, that there is no proof of criminal intent on Stenson's part. In answer thereto it is to be remembered that this is a civil case involving only the necessity of showing probabilities. In the criminal case of *State* v. *Baxter,* 89 Ohio St., 269, the Supreme Court gives approval to the doctrine of *Railroad Co.* v. *O'Donnell,* 49 Ohio St., 489, wherein it was held that "Any wrongful exercise of dominion over chattels in exclusion of the rights of the owner, or withholding of them from his possession under a claim inconsistent with his rights, constitutes a conversion."

In a Washington case, *Price* v. *Royal Ins. Co.,* 119 Wash., 93, where the question was whether the car had been stolen, it was held that a theft within the meaning of a theft insurance policy is shown if possession is actually taken by a wrong-doer, and that *intent to steal can be inferred* even though the possession be but temporary. The opinion in that case, page 96, says:

"Whether there is a theft is not dependent

upon the length of time that the property is converted nor the extent of the use to which the thief was able to put it, if possession is actually taken by a wrongdoer and intent to steal can be inferred, even though the possession is but temporary. *Robinson* v. *State*, 113 Ind., 510, 16 N. E., 184; *State* v. *Maddaus*, 137 Minn., 249, 163 N. W., 507; *Adams* v. *State*, 12 Ga. App., 808, 78 S. E., 473. These were criminal actions. In *Kansas City Regal Auto Co.* v. *Old Colony Ins. Co.*, 187 Mo. App., 514, 174 S. W., 153, recovery was sustained on a policy where the disappearance was not explained in any manner. To the same effect is *Chiepakoff* v. *National Ben Franklin Fire Ins. Co.*, 97 Misc. Rep., 330, 161 N. Y. Supp., 283.''

On the contrary, it is said by the editor of a note in 46 L. R. A. (N. S.), 567:

''As a rule, no recovery can be had upon policies indemnifying against loss by burglary, theft, or larceny where the evidence merely shows that property covered by the policy is missing.''

As supporting this text there are cited: *Schindler* v. *U. S. Fidelity & Guar. Co.*, 58 Misc., 532, 109 N. Y. Supp., 723; *Gordon* v. *Aetna Indemnity Co.*, 116 N. Y. Supp., 558; *Hart* v. *American Fidelity Co.*, 121 N. Y. Supp., 605; *Duschenes* v. *National Surety Co.*, 79 Misc., 232, 139 N. Y. Supp., 881. Some of the policies so reported upon, however, contained a provision that the insured should produce direct and affirmative evidence that the loss of the property was due to an act of burglary or larceny, and the cases cited are generally to be distinguished from the case at bar either upon the facts or upon the terms of the policy.

In *Kansas City Regal Auto Co.* v. *Old Colony*

*Ins. Co.,* 187 Mo. App., 514, the facts were these: The salesman left the car in a line of cars under the supervision of an employe of the hotel and went inside with his companions. After remaining there 15 or 20 minutes he took temporary leave of them to return the car to plaintiff's garage. Going to the place where he had left it, which was across the street from the hotel, he found it was gone. He inquired at once of the hotel employe if he had seen any one take it, and, receiving a negative answer, went into the hotel and told his companions of its disappearance. Then he telephoned to the police department. He testified that he never saw the car again and had no knowledge of what had become of it. On these facts the court held that the facts and circumstances disclosed in the evidence of plaintiff would support a reasonable inference that the salesman in good faith left the car in front of the hotel, and that some person or persons not in the employment of plaintiff, or in any sort of relationship to plaintiff, its officers or agents, stole the car and made away with it.

Indeed, to hold otherwise than that the intent may be inferred from an unauthorized taking would probably render it impossible to recover for most of the automobiles stolen. Since, therefore, a criminal intent is practically always a matter of inference from proved circumstances, and is to be determined by the jury with all the other elements of embezzlement, unless there be an entire failure of proof (*State* v. *Gross,* 91 Ohio St., 161), there only remains for determination in this case the question whether there were any circumstances

from which such intent might be inferred. The following facts were in evidence:

Stenson and young Meyer were working together. They were on such terms that the young man turned over the machine to Stenson without exacting anything for his protection against an improper use of the machine. Stenson was to take the car to a designated place. Stenson knew that Meyer lived in Cincinnati and knew where his headquarters in Cleveland were. Stenson never wrote Meyer or otherwise communicated with him. Meyer never found the car at the place designated. He never heard from or of Stenson after the latter got possession of the car. These circumstances without evidence to the contrary warranted the jury in drawing the inference that the car had been converted by Stenson with criminal intent.

The judgment is affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., and SAYRE, J., concur.

Judges of the Fourth Appellate District, sitting in place of Judges BUCHWALTER, CUSHING and HAMILTON, of the First Appellate District.