SCHENECTADY VARNISH COMPANY, INC., Plaintiff, v. THE AUTO-MOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, and Another, Defendants.

Supreme Court, Schenectady County, July 30, 1926.

Insurance — automobile theft insurance — action to reform policy of theft insurance and to recover thereon — insurer issued policy on automobile against " theft, robbery or pilferage " by any person other than one in assured's household service or employment — defendant notified insurance agent of dissolution of copartnership and that its assets, including automobile, had been taken over by plaintiff corporation — agent told defendant policies covering automobile in future would be in name of corporation — reformation of policy justified by proof — automobile was taken from garage at mid-day by employee of defendant's wife, without his knowledge or consent, with intention of returning it after giving family ride — automobile was wrecked while in employee's possession — employee was neither in assured's nor defendant's service within meaning of policy — act of employee was larceny within meaning of Penal Law, § 1293-a, but not theft within meaning of policy — plaintiff cannot recover value of automobile in absence of evidence showing felonious taking.

Plaintiff corporation, which, immediately after its creation, took over among the assets of a copartnership an automobile covered by a policy of theft insurance issued by the defendant insurance company, running to the defendant, individually, and covering the automobile against " theft, robbery or pilferage " by any person other than one in defendant's household or employment, is entitled to a reformation of said policy by substituting the name of the plaintiff as the assured and owner of the automobile in place of the defendant, where it appears that on the creation of plaintiff corporation, subsequent to the issuance of said policy, the defendant, who became the president of the corporation, upon notifying the insurer's agent of the dissolution of the copartnership and the acquisition of all its assets, including the automobile, by the new corporation, was told by said agent that future insurance on the automobile would be in the name of the corporation, since the failure of the insurance company to issue a valid policy of insurance correctly stating the name of the true owner of the automobile was either the result of mistake or is tantamount to fraud on its part.

However, plaintiff corporation is not entitled to recover under the policy as reformed for the alleged theft of the automobile by a gardener employed by defendant's wife who, without the consent of either the defendant or the assured, at mid-day removed said automobile from the garage in the rear of defendant's home and while in the possession of said automobile in company with his family drove it into a ditch, wrecking it, where the evidence shows that said employee merely took the automobile without any effort to conceal its removal and with the intention of returning it, since the policy covers only a felonious taking and does not include a case where the vehicle is taken openly in the day time without any intent to steal it.

The gardener was not an employee in assured's service or employment within the meaning of the policy, since the evidence shows that he was neither subject to the control nor bound to render service to either the assured or the defendant.

While the act of the employee was larceny within the meaning of section 1293-a of the Penal Law, that statute does not aid the plaintiff, since larceny thereunder is not theft within the meaning of the policy herein.

Action to recover on a policy of theft insurance issued by the defendant insurance company covering an automobile.

*Strong & Golden,* for the plaintiff.

*Andrew J. Nellis,* for the defendant insurance company.

Heffernan, J. The complaint contains two causes of action, one for the reformation of the policy by substituting the name of the plaintiff as the assured and owner of the car in place of the defendant W. Howard Wright, and to recover under the policy as reformed for the alleged theft of the car by one Hunt. The second count is based upon an assignment by the defendant Wright to the plaintiff of any cause of action in his favor by reason of the alleged theft under the same policy.

There is no serious dispute concerning the facts. Prior to the month of July, 1923, the defendant W. Howard Wright and his wife were engaged in business in the city of Schenectady, N. Y., trading under the assumed name of Schenectady Varnish Company. There was included in the copartnership assets the automobile in question. In July, 1923, the plaintiff corporation was organized and immediately after its creation took over the partnership business and assets including this car. Mr. Wright became the owner of all capital stock of the corporation with the exception of three shares, two of which were issued to his wife and the remaining share was issued to his brother. At the time of the formation of the corporation this car was covered by a policy of theft insurance running to the defendant Wright and issued by the defendant insurance company. This policy expired at noon on September 28, 1923. On that day the defendant insurance company issued its policy of insurance covering the plaintiff's automobile against " theft, robbery or pilferage " from noon of September 28, 1923, to noon of September 28, 1924, in an amount not to exceed $3,700. There was excepted from the risks, theft, robbery or pilferage " by any person or persons in the assured's household, or in the assured's service or employment, whether the theft, robbery or pilferage occur during the hours of such service or employment or not." Upon its expiration the policy was renewed for a further period of one year from September 28, 1924. In each of these policies and in the renewal the defendant W. Howard Wright is described as the owner. The various policies of insurance were written on behalf of the defendant insurance company by the Schenectady Insuring Agency, Inc. The insurance

was solicited and procured on the defendant's behalf by Deforest V. S. Garnsey, one of the defendant's local agents.

Shortly before the issuance of the policy of September 28, 1923, Mr. Wright informed the defendant's agent Garnsey that the partnership theretofore in existence had been dissolved and that all its assets, including this automobile, were taken over by the plaintiff. He instructed Garnsey that future insurance on this car should be in the name of the corporation. Garnsey assured him that this would be done. When issued, the policy under which this claim is made was delivered at the plaintiff's office. Neither Mr. Wright nor any other officer of plaintiff gave any attention to its provisions. On November 6, 1924, plaintiff made its check for the renewal premium to the order of the Ætna Life Insurance Company. That check bears the indorsement of the defendant company and was stamped paid on December 31, 1924.

The home in which Mr. and Mrs. Wright resided was owned by the latter. There is a garage on these premises in which this car was usually kept. Mrs. Wright employed a gardener named Hunt and his wages were paid by checks drawn on her personal account. In addition to his other duties on the premises he was required to keep the garage in order and to occasionally wash the cars. For these purposes he had a key to the building. During the year 1924 Hunt had neither an operator's nor a chauffeur's license. He had been in Mrs. Wright's employ performing the same duties for a number of months. Under the terms of his employment he was not required to perform labor or render service on Sundays. He had no permission from Mr. Wright, from the plaintiff or any one else to use or drive the car.

On Sunday, September 28, 1924, Mr and Mrs. Wright were absent from home. Their daughter was in charge of the premises. Just before noon her attention was directed to the garage by the sound of a motor. Upon investigation she discovered Hunt in the act of taking the car out of the building. She inquired if her father had given him permission to use it and the only response he made was: "Don't squeal on me." Miss Wright made an unsuccessful attempt to communicate with her uncle by telephone to apprise him of what had occurred. It is conceded that after Hunt took the car he was joined by his wife and baby and two friends and he drove the machine on the public highway for a distance of about three miles in the direction of Saratoga. While returning toward Schenectady the car accidentally went into the ditch and was wrecked. Neither party to this action removed it from the place where the casualty occurred. By direction of some third person it was placed in storage where it now remains. Before it

was damaged its actual value was $2,850. Its salvage value at the time of the trial was $850.·

Plaintiff made a claim under the theft clause contained in the policy and furnished the insurance carrier with the usual proofs of loss. The latter repudiated liability and now contends that the policy is void because Wright is not the true owner, that the theft was by a servant of Wright and that the facts do not establish the commission of the crime of larceny within the meaning of the contract between the parties. In support of its position the defendant cites and relies on *Van Vechten* v. *American E. F. Ins. Co.* (239 N. Y. 303) and *Glens Falls Insurance Company* v. *Stewart* (127 Misc. 353).

The proof here not only justifies but requires a reformation of the policy of insurance. The attention of the defendant's agent was called to a change in the ownership of plaintiff's business. This fact was communicated to the identical agent who represented the defendant in the negotiations for the policy. The defendant solicited the business of insuring this car. The thing insured was an automobile. If the written instrument delivered did not run to the real party in interest, that is the fault of the defendant and not the plaintiff, and plaintiff should not suffer because of the mistake. An insurance company is bound by knowledge of, or notice to, its agent within the general scope of his authority. Notice was communicated to the agent of the formation of the corporation and the only legitimate inference is that the defendant was not in ignorance of that fact. Then, too, the defendant received and retained the premium. A policy of insurance is subject to reformation, because of fraud or mistake, by a court of equity in a proper case so as to conform to the actual agreement. This should be so to prevent injustice. Of course, it is not permissible, under the guise of reformation, to make a new contract for the parties. It was the duty of the defendant in this case to issue a valid policy of insurance, correctly stating the name of the owner of the car. Its failure to do so is either the result of a mistake or is tantamount to fraud on its part. A court of equity should not listen to its plea to be relieved from liability under such circumstances. To do so is to encourage unjust and unrighteous defenses.

I am not impressed with the defendant's claim that Hunt was in the assured's service or employment within the meaning of the policy. He was in the service of Mrs. Wright. She is a woman of independent resources. Hunt was neither in the employment of the assured nor of the defendant Wright. He was not subject to their control or bound to render service to them. To be in the service or employment of the plaintiff within the terms of the policy,

Hunt must, of necessity, be subject to its control and direction and bound to render personal service to it.

By the provisions of section 1293-a of the Penal Law (added by Laws of 1909, chap. 514, as amd. by Laws of 1922, chap. 500) " any person who without the consent of the owner shall take, use, or operate, or cause to be taken, used or operated upon a private or public highway, park, parkway, street, field, inclosure or space, an automobile or motor vehicle, for his own profit, use or purpose, steals the same and is guilty of larceny and shall be punishable accordingly."

This statute changes the common-law rule upon the subject of larceny in respect to motor vehicles and establishes a different standard pertaining to them from that prevailing in respect to any other article of personal property. There can be no doubt that Hunt's act is larceny within the meaning of the statutory definition. The only serious question in this case is, do the facts here establish the commission of the crime of larceny independently of, and apart from, the provisions of section 1293-a of the Penal Law? Section 1290 of the Penal Law defines larceny. Our statutory definition is not merely declaratory of the common law. It embraces every act that was larceny at common law and also includes within its scope the crimes formerly known as embezzlement and false pretenses. The plaintiff has no cause of action against the insurance company even though it has been wrongfully deprived of its property unless it has been so deprived of it feloniously. (*Rush* v. *Boston Insurance Co.*, 88 Misc. 48.) The plaintiff has the burden of proving all the material elements of its cause of action by a preponderance of evidence and that necessarily includes proof of every element of the crime of larceny. Where one takes personal property of another with intent to appropriate it to his own use and to deprive the true owner of it, that is larceny. At the time of the taking and asportation there must exist in the mind of the taker the intent to convert or appropriate permanently to his own use the property of another. Every taking of another's property without legal justification is a trespass upon the owner's rights to its continued possession, but it does not constitute a crime unless the act is perpetrated feloniously, that is, *animo furandi* or with the intent to steal. (36 C. J. 763; *McCourt* v. *People*, 64 N. Y. 583.) In the case cited the plaintiff in error was convicted of the crime of larceny. He and two companions stopped at the house of the prosecutor who was absent from home. He asked the prosecutor's daughter for a drink of cider, offering to pay for it. She refused to let him have it and he, thereupon, opened the cellar door, although forbidden to do so

by her, went in, drew some cider and took it away. He was ordered to leave the premises. Upon the trial his counsel requested the court to direct an acquittal, which was denied. The Court of Appeals reversed the judgment of conviction and held that the evidence failed to show that the accused entered with intent to commit a crime; that while there was evidence of an intent to obtain cider and thus deprive the prosecutor of his property, there was an absence of the circumstances ordinarily attending the commission of larceny and which distinguish it from a trespass, and that the transaction was a trespass merely. In the course of the opinion, Judge Andrews, who wrote for the court, said: "Every taking by one person of the personal property of another, without his consent, is not larceny; and this, although it was taken without right, or claim of right, and for the purpose of appropriating it to the use of the taker. Superadded to this, there must have been a felonious intent, for without it there was no crime. It would, in the absence of such an intent, be a bare trespass, which, however aggravated, would not be crime. It is the criminal mind and purpose going with the act which distinguishes a criminal trespass from a mere civil injury."

The intention must exist to deprive the owner not temporarily but permanently of his property. (*Van Vechten* v. *American E. F. Ins. Co., supra; Parr* v. *Loder,* 97 App. Div. 218.) When one without permission takes the goods of another intending and having the power to restore them, the taking, though wrongful, does not constitute larceny. To consummate the crime the deprivation must be permanent and not temporary. The line of demarcation between the crime of larceny and a mere civil trespass is, in many instances, very difficult of distinction but it exists, nevertheless. The intent to steal is an indispensable ingredient of the crime of larceny. The taking or retention of property, where there is no such felonious intent, does not constitute a crime. (*People* v. *Kenney,* 135 App. Div. 380.) In the case just referred to the defendant was indicted for grand larceny in stealing a horse, wagon and set of harness. He was convicted in the Court of General Sessions. On the trial it appeared that the defendant was in the employ of one Keefe, who was a milk dealer in the city of New York; that on the evening of the 13th of November, 1908, he came to the complainant's house at a quarter past six for his supper; that at that time there was a horse, wagon and harness in the complainant's stable; at seven o'clock they had disappeared. The defendant was arrested on the eighteenth of November at Yonkers. When asked what he had done with the horse and wagon he stated that he had taken them for a ride; that he drove

around Central Park and tied the horse to a lamp post at One Hundred and Fortieth street and Seventh avenue. Subsequently the complainant recovered his property at a livery stable in New York city. The defendant testified that he took the property about half past six in the evening; that he did not intend to steal the horse but wanted to have a little fun. The trial court instructed the jury that to constitute the crime of grand larceny it was not necessary that there should be an intent to keep the property but that a person, who with intent to deprive the true owner of the use of his property takes it, steals such property and is guilty of larceny; that if the jury believed that the defendant intended to deprive the owner of the use of his property for ten minutes, or any other period of time, and took it with that intent, the jury could convict him. The defendant's counsel asked the court to charge that if the defendant took the horse and wagon with the intention of returning it, he was not guilty. The court declined to so charge. The Appellate Division reversed the judgment of conviction and held that the court erred in refusing to charge the defendant's request. In its opinion the court said: " If a person takes the property of another with intent to deprive or defraud the owner of his property, or of the use and benefit thereof, he is guilty of larceny. What evidently was intended was such a permanent appropriation of the property as would deprive the owner of the property itself or of its use and benefit. A taking of property without such an intent is not larceny. * * * The intention that the statute requires must be something more than an intention to retain possession of property without an intent to actually appropriate the property, although the owner of the property would be necessarily deprived of its possession while such retention continued. The distinction is, that where a person takes property with the intent to appropriate it to his own use and deprive the owner of the property itself, or to a substantial interest in it, that larceny is committed, and the taking or retaining possession of property where there is no such actual felonious intent does not constitute a crime."

It seems to me that in this case all the circumstances usually accompanying a felonious taking are absent. As I view it, the essential element of the felonious intent is wholly lacking. The conduct of Hunt is divested of a guilty intent without which there can be no crime. This car was not taken under the cover of darkness but at midday. It was taken in the presence of a member of the household. The perpetrator of the act, when questioned, made use of the very significant expression: " Don't squeal on me." It seems to me that those words used in connection with all the other

surrounding circumstances, clearly meant that he planned to return the car before its absence was discovered. He knew that his identity was known. He took his wife and baby and friends on the ride. He made no effort to conceal the car. He was returning. There is a vast distinction between a criminal act and one that involves only the violation of property rights for which there is a remedy by civil action. Hunt's conduct, except for the statute, while highly reprehensible, is a mere trespass. If he, without permission, had taken some other article of personal property from his employer, such as a lawn mower, intending and having the power to restore it after he had used it for his own purpose, the taking would, of course, be wrongful but in my judgment not larcenous. In principle, and except for the motor vehicle statute, there is no distinction between the taking in either case. That statute does not aid the plaintiff. Larceny under that statute is not theft within the meaning of this policy. (*Van Vechten* v. *American E. F. Ins. Co.*, *supra*.) The policy here covers only a felonious asportation and does not include a case where the machine was taken openly in the day time, since such taking, within its terms, amounts only to a trespass. The intent to steal is a necessary component of the crime of larceny and consequently no recovery for damages can be had, if the car was taken and used by Hunt without the owner's consent, but without intent to steal it. I cannot escape the conviction that it was Hunt's purpose to restore the car. That being so, there can be no recovery under the policy. The court is not at liberty to extend by construction the language used by the parties in their contract. It may very well be that insurance policies should be altered in this respect. That, however, is a legislative function.

I fully agree with plaintiff's counsel that the authorities upon which the defendant relies, and to which reference has been made, are not decisive of the question involved here. In the *Van Vechten* case the proprietor of a garage, who used a car on a trip for his own purpose, lawfully came into its possession, and the offense consisted in thereafter using it without authority. The Court of Appeals held in a characteristically eloquent opinion by Judge Cardozo that there could be no recovery under a theft policy. In *Glens Falls Insurance Company* v. *Stewart* (*supra*) the defendant and his wife were living separate and apart and the wife appropriated the car under a claim of right and the court held that it was never intended by a theft policy to indemnify against the taking of an automobile under such circumstances.

The plaintiff relies on *Callahan* v. *London & L. F. Ins. Co., Ltd.* (98 Misc. 589; affd., without opinion, 179 App. Div. 890), to sustain

a recovery here. That case arose in the City Court of New York. From the opinion rendered in the Appellate Term the court evidently assumed that the statutory larceny, as defined by section 1293-a of the Penal Law, entitled the plaintiff to recover. That case was referred to in the prevailing opinion in the Appellate Division in the *Van Vechten Case* (206 App. Div. 39) and cited by the respondent in his brief in the Court of Appeals. Judge CARDOZO made no reference to it in his opinion. I have examined the printed record on appeal and the question later involved in the *Van Vechten* case was distinctly raised on the trial and in the appellate courts. Except for the later decision in our highest court, it would be a controlling authority. Under the circumstances it must be deemed to be overruled.

For these reasons the complaint is dismissed, but under the circumstances, without costs.

Judgment is hereby directed accordingly.