4730.  GEORGIA LIFE INSURANCE COMPANY *v.*
McCRANIE, administratrix.

1. In the trial of an action upon a life-insurance policy, where the defense is that the insured met his death by suicide, and the plaintiff contends that his self-destruction was accidental, and the defendant introduces evidence that, shortly prior to his death, the insured stated that he intended to commit suicide, because his wife had been unfaithful to him, it is not erroneous to permit the plaintiff to introduce evidence of the good character of the wife for chastity. This evidence was admissible upon the theory that a husband with sound mind would not charge his wife with infidelity, when there was no evidence upon which such a charge could have been founded.

2. In the trial of an action upon a life-insurance policy, where it was sought to recover damages and attorney's fees on account of bad faith of the company in refusing to pay the claim, it was erroneous to reject testimony of one of the general officers of the insurance company showing that prior to the refusal to pay the loss, he investigated the circumstances and in good faith reached the conclusion that the company was not liable; such testimony disclosing facts sufficient to show probable cause for refusing to pay the loss.

3. The evidence demanded a finding that the refusal of the defendant to pay the loss was not made in bad faith, and the verdict finding attorney's fees was contrary to the evidence. ·

4. Except as above indicated, no material error was committed, and the judgment will be affirmed upon the condition that the plaintiff will write off the sum recovered as attorney's fees.

DECIDED JUNE 25, 1913.

Action on insurance policy; from city court of Eastman—Judge Neese. January 28, 1913.

*W. M. Clements, W. L. & Warren Grice, W. B. Birch, Roberts & Smith,* for plaintiff in error.

*W. A. Wooten, C. W. Griffin,* contra.

POTTLE, J.  The death of the insured resulted from taking carbolic acid. The policy was made payable to his estate, and suit was instituted by his wife as administratrix. The plaintiff claims that the death of the insured was accidental, and the defendant contends that his self-destruction was intentional. Death by suicide was not covered by the policy. The plaintiff recovered the amount of the policy, which was $4,000, besides interest, and twenty per centum of this amount as attorney's fees.

1.  The defendant introduced witnesses who testified, in substance, that shortly before the death of the insured he threatened to commit suicide, giving as his reason his belief that his wife had been unfaithful to him, and in one instance giving the names of

men with whom he claimed she had sustained criminal relations. In several grounds of the motion for a new trial complaint is made that the court committed error in permitting the introduction of evidence as to the good character of the wife of the insured and her reputation for chastity in the community in which she lived. It is argued that this testimony raised a false issue in the case, that the real question was whether the insured had said that his wife had been unfaithful to him, and not whether the charge was true. It is contended that the company did not undertake to establish the truth of the charge, but merely undertook to show that the husband had made the charge and had assigned this as a reason why he no longer desired to live.

The general rule is that in an action by a woman upon a policy of insurance upon the life of her husband, her character is not involved, and evidence of her good character is not admissible. Nor is her character as a witness in her own behalf admissible, where no impeaching evidence has been introduced by the defendant. *Travelers Insurance Co.* v. *Sheppard,* 85 *Ga.* 751 (12 S. E. 18). In the present case Mrs. McCranie testified as a witness, and an effort was made to impeach her by proof of contradictory statements made previously to the trial, in reference to matter material to the main issue in the case. In such a case it is well settled that testimony of a witness may be supported by proof of general good character. Civil Code, § 5881. Aside from this, we think the evidence was admissible for another reason. While at least two witnesses testified that the insured had made statements reflecting upon his wife's character, the proof is overwhelming that she was a chaste woman and that her character in this respect was unassailable. The husband was dead. His lips were sealed. He could not be heard to deny the testimony of the witnesses who claimed that he had made these serious charges against his wife. It is true that the question of the truth or falsity of these charges was not in issue, but since there could be no direct proof that the husband had not impeached his wife's character for chastity, she could only resort to indirect and circumstantial evidence to refute these charges. It is not reasonable to suppose that a man of sound mind would charge with unchastity a wife against whom no breath of suspicion had arisen in the community in which she had resided for many years. The jury might well reason that no husband would bring such a

charge against such a wife. The wife might well say: "My husband did not and would not make such a serious reflection upon my character without at least some evidence upon which to base it, and if I can show that there was no such evidence, and that such a charge, if made, would have been wholly without foundation, such proof will justify the inference that no such reflection was in fact made upon my character by my husband." We recognize fully the force of the defendant's contention that the evidence was prejudicial to the company's defense and was calculated to arouse in the minds of the jury a spirit of resentment against the company for undertaking to assert that the husband had assigned his wife's unfaithfulness as a reason for destroying his life; but this was one of the risks which the company took, and it can not complain of the conclusion on this question reached by the jury, which was practically demanded by the evidence. If the testimony of the witness in reference to the reasons assigned by the insured for taking his life was untrue, the jury might also conclude that the testimony that the insured had threatened to take his life was equally false.

2. The statute of this State allows attorney's fees to be recovered against an insurance company in suits upon insurance policies, "provided it shall be made to appear to the jury trying the same that the refusal of the company to pay said loss was in bad faith." This statute has been held to be a constitutional and valid law. *Harp* v. *Fireman's Fund Insurance Co.,* 130 *Ga.* 726 (61 S. E. 704). Bad faith, as used in this statute, has been defined to mean "any frivolous or unfounded refusal in law or in fact to comply with the requisition of the policy-holder to pay according to the terms of his contract and the conditions imposed by statute." *Cotton States Life Ins. Co.* v. *Edwards,* 74 *Ga.* 220 (4). See, also, *American Insurance Co.* v. *Bailey,* 6 *Ga. App.* 424 (65 S. E. 160). Where unusual and apparently unnecessary delay in paying the claim is shown, the burden is upon the company to show that the refusal was made in good faith. *Missouri Insurance Co.* v. *Lovelace,* 1 *Ga. App.* 446, 466 (58 S. E. 93). In the present case, therefore, the burden was upon the company to make it appear that its refusal to pay was not frivolous or unfounded, either in law or in fact. By showing that the contract did not authorize a recovery in case of suicide, the company acquitted itself of the charge that its defense was unfounded in law. In undertaking to carry the

burden of proof that the refusal to pay was not also unfounded in fact, the company offered the testimony of Mr. Hall, its general counsel, to the following effect: When the death of the insured was reported to the company, Mr. Hall instituted an investigation as to the circumstances under which the accused met his death. The company furnished blank forms for proofs of death, and within thirty days thereafter the wife of the insured and the physician who was called. to attend him came to Macon for a personal conference with the general counsel of the company in reference to the claim. In this conference the physician stated that the insured , had been taking bay rum for toothache, but had not been in the habit of swallowing it for the toothache. He further stated that the first impulse would be to expel from the mouth carbolic acid, if taken in the mouth unawares. From this conversation, and on account of other facts and circumstances which illustrated the cause of the death of the insured, Mr. Hall, in good faith as general counsel for the company, reached the conclusion that the insured had met his death by suicide, and he therefore advised the company to decline to pay the claim. The court repelled this testimony, upon the ground that it was irrelevant and immaterial. Counsel for the defendant in error contend that the evidence was properly rejected under the authority of *Travelers Insurance Co.* v. *Sheppard,* supra. In that case the plaintiff sought to introduce in evidence an affidavit made by a brother of the insured and submitted to the company, in connection with the preliminary proofs of death, prior to the suit. This affidavit contained a recital of the circumstances of the disappearance of the insured, based mainly on hearsay, together with some representations as to a reward having been offered for the recovery of the body, and as to the character of the river and the nature of the obstacles to the finding of the body therein. The affidavit furnished names and addresses. of persons acquainted with the river, as having knowledge of these obstacles. The company's defense in that case was that the insured , had committed suicide by drowning, and the plaintiff's contention was that his death was accidental. The Supreme Court held: "The good or bad faith of an insurance company in refusing to pay after demand is to be determined by the evidence adduced at the trial upon the merits of the controversy, and not by ex parte affidavits produced to the company as preliminary proof or for the

company's information to induce voluntary payment. Probable cause for refusing payment will negative the imputation of bad faith, and without such probable cause refusal will be at the company's peril. Ex parte affidavits are not admissible to illustrate the question of good or bad faith." While there is some language of the Supreme Court in the above-stated case which would support the contention of the defendant in error in the present case, it must be apparent that the decision, upon its facts, does not control the instant case. In its last analysis it amounts to no more than a ruling that what may be imparted to the company in preliminary proofs of death by the beneficiary, or in affidavits supporting such proofs, would not be admissible for the purpose of showing bad faith on the part of the company in refusing to pay. We do not understand that decision to hold that the company would not be permitted to show that it had in good faith instituted an investigation, had received information which satisfied it of non-liability, and offered to prove, not by ex parte affidavits, but by sworn testimony, what investigation it did make and just what information it had received, and the evidence upon which it relied in passing upon the question of liability.

The circumstances surrounding the death of the insured in the present case were extremely suspicious. The insured, while alone and in the daytime, took from a medicine cabinet a bottle of carbolic acid and swallowed a sufficient quantity of the poison to cause his death in a short space of time. No one saw him take it and no one could say with certainty whether his act was intentional or not. In order to determine this question, all the facts and circumstances which threw light upon the question of intention were proper matters for consideration by the jury. Among these was the very important circumstance, detailed to Mr. Hall by the physician who attended the insured, that upon taking carbolic acid in the mouth the first impulse would be to expel it rather than to swallow it; and that while it was claimed that the insured was taking bay rum for the toothache, the fact was that he had not been in the habit of swallowing bay rum, but simply held it in his mouth in order to relieve the pain. These statements of the physician, in connection with other facts and circumstances, led Mr. Hall to advise his client to decline to pay the claim. In so doing he says he acted in good faith, honestly believing that the company

was not liable. As a representative of the company in the transaction, he had a right to testify affirmatively that he acted in good faith. Such testimony was a statement of fact, and not of a mere conclusion. *Hale* v. *Robertson,* 100 *Ga.* 168 (27 S. E. 937). In the *Sheppard* case it was held that "Probable cause for refusing payment will negative the imputation of bad faith." The purpose of the testimony of Mr. Hall was to show that the company had probable cause for refusing to pay the claim. Certainly it was at least a jury question whether Mr. Hall stated sufficient facts in his testimony to authorize the conclusion that the company had probable cause for the refusal. In Blackwell *v.* American Central Insurance Co., 80 Mo. App. 75, the court said: "It must be borne in mind that the statutory punishment is not inflicted merely for the reason that it turns out at the trial, there was, in reality, no reason for the delay. The question is, how did matters appear before the trial, as judged by a prudent and reasonable man seeking to find out the facts about an occurrence which it was his duty to investigate?" The company is punished for its refusal to pay the claim. The question is, did it then act in bad faith? If it had probable cause for refusing, its refusal can not be said to be either frivolous or unfounded, and hence in bad faith. Whether it had probable cause at that time must be determined by the facts and circumstances as they then existed, and by the knowledge which the company then had. Suppose, for example, a thoroughly reputable man had informed the company that he was present with the insured at the time of his death, heard him say that he was going to commit suicide by taking poison, and saw him deliberately take the bottle of carbolic acid and swallow its contents. No one would contend that, with such information, a refusal to pay would be frivolous or unfounded. But suppose this witness should die before the trial and the company be left, therefore, without any defense, and the plaintiff should insist upon trying the case simply for the purpose of mulcting the company in attorney's fees and damages, could it be held that the company would be precluded from proving that it had received this information from the person since deceased, in order to exculpate itself from the charge of bad faith? And yet this is exactly what would happen if the contention of the defendant in error be sound and some of the intimations in *Travelers Insurance Co.* v. *Sheppard,* supra, as well as in *Mis-*

*souri Insurance Co.* v. *Lovelace,* supra, be applied in all their strictness. If the company is to carry the burden of proving good faith, it seems to us it ought to be permitted to prove anything which would negative the existence of bad faith at the time it refused to pay the loss. Of course, if subsequent to the refusal to pay and prior to the trial, it ascertained that its information was incorrect, its continued refusal to pay would justify the imputation of bad faith. All these would be questions for the jury. In our opinion it was error to exclude the testimony of Mr. Hall.

3. The evidence was conflicting and authorized the finding of the jury that the self-destruction of the insured was accidental. It did not, however, demand such a finding. On the contrary, there were many circumstances which would have authorized the conclusion that the insured met his death by suicide. There is absolutely nothing in the evidence to justify the inference that the company acted in bad faith in refusing to pay the claim, except the fact that there was evidence that the death of the insured was accidental rather than intentional. The twelve men composing the jury found this to be the fact, but certainly it can not be said that every reasonably prudent man must have reached the same conclusion. There was much expert testimony to the effect that on account of the burning sensation resulting almost immediately upon taking the carbolic acid into the mouth, the natural impulse would be to expel it. It also appears that carbolic acid has a pronounced odor differing from that of bay rum, and this is a fact which the court might know judicially. When this is considered in connection with the fact that the poison was taken in the daytime, and with the further evidence that the insured had stated to more than one person that he intended to kill himself, the evidence itself acquits the company of bad faith. The verdict against the company must be accepted as a finding that these things were not true, but the statute does not contemplate that in every case of conflicting evidence, the company may be penalized by the imposition of attorney's fees. The question is, was the refusal to pay wholly frivolous and unfounded, either in law or in fact, or were there facts and circumstances sufficient to justify the conclusion of non-liability by a reasonably careful and prudent man? The jury are not authorized to find that the refusal to pay was in bad faith merely because in their opinion the company ought to have paid the claim.

4. Other than as above indicated, we find no substantial error. The letters of administration were not inadmissible because they described the deceased as "Chas. H. McCranie," whereas the proof of death was that of Charlie H. McCranie, and the policy was issued to Charlie H. McCranie. These names import the same person, and there was no contention that they did not in fact relate to the same person. Nor was the proof of death inadmissible because the policy was therein described by mistake as being for $400, and the policy sued on was for $4,000. The fact that in the proof of death it was stated that carbolic acid was taken by mistake for bay rum did not render the proofs inadmissible. The policy required the cause of the death to be given. One witness testified that he prepared the proof of death and the statement made by the attending physician, and that the physician wrote out his answers without any assistance. The witness was asked if he explained to the physician "the facts of the affidavit." He replied that he did not, that "when we fixed the proof of death, we had no idea of this suit." This answer was evidently made in explanation of the failure of the witness to explain to the physician the facts in the affidavit. The answer was not inadmissible for any of the reasons assigned. It was not error to permit proof that a brother of one of the witnesses was in litigation with the wife of the insured, the plaintiff in the case. This was of slight evidentiary value, but was a proper matter for consideration by the jury in passing upon the credibility of the witness. A witness who had testified in reference to statements made to him by the insured, which tended to show that the insured intended to take his own life, claimed that he had repeated these statements to certain named persons. These persons were permitted to testify that no such statements had been repeated to them by the witness. It is contended that no proper foundation was laid for impeaching the witness by proof of contradictory statements. There was no error in admitting the testimony. The witness having claimed that he told certain persons what the insured had stated to him, it was competent to show that the witness had not repeated the statements as he claimed. This was simply impeaching the witness by disproving facts about which he testified, and was material as tending to discredit his testimony in reference to what he claimed the insured had told him. It was further competent to prove by one of these persons that the witness had not

only not repeated such a statement which he claimed the insured had made, but had stated affirmatively that he did not know anything about the case. It was probably error to permit a witness to examine three bottles, one containing bay rum, one carbolic acid, and one choloroform, and to state that, in his opinion, the insured could not have told one from the other. In view of the fact, however, that the jury could see the three bottles and reach their own conclusion in reference to the matter, we do not think the admission of this testimony, even if erroneous, sufficient to justify the grant of a new trial. It was not error to permit an agent of the insurance company to testify that the insured took out the insurance in order to borrow money on it, and that the agent sought the insured for the purpose of inducing him to take the insurance. This testimony had little bearing upon the case, but may have shed some light upon the question in issue, in view of the fact that the insured met his death some six or seven months after the insurance was taken out. Even if erroneous, the admission of the evidence was not of sufficient importance to justify the grant of a new trial. It was not prejudicial error in this case to charge that pleadings are in no sense evidence and have no value as evidence, but that the jury should refer to them solely for the purpose of ascertaining the issues between the parties. Nor was it error to charge the jury in substance that when death was shown the law would presume it accidental, and the burden was upon the company to prove that the case came within the exception in the policy. *Travelers Ins. Co. v. Gaynor,* ante, 601.

As the verdict against the company for the full amount of the policy was authorized by the evidence, and as no material error was committed which affected the plaintiff's right to recover this amount, the judgment will be affirmed, on condition that the plaintiff write off the sum recovered as attorney's fees.

*Judgment affirmed, on condition.*