BIRD *v.* ST. PAUL FIRE & MARINE INSURANCE CO.

1. INSURANCE — THEFT INSURANCE — PROOF OF LOSS—DENIAL OF LIABILITY—PRINCIPAL AND AGENT.
    In an action on a policy of insurance against the theft of an automobile, where plaintiff gave notice of his loss to the agents who issued the policy, and a man from their office took him to an adjuster of the company who denied the claim, plaintiff was justified in acting upon the belief that said adjuster was an agent of the company, and the denial excused him from proving his loss.

2. SAME—EVIDENCE—INTENT TO STEAL INFERABLE FROM EVIDENCE.
    Evidence from which the jury could reasonably infer a theft of the car was sufficient, and it was not incumbent upon plaintiff to negative conjectural defenses on the part of the person who took it.

Error to Wayne; Dingeman (Harry J.), J.   Submitted January 24, 1922.   (Docket No. 129.)   Decided March 31, 1922.

Assumpsit by Henry E. Bird against the St. Paul Fire & Marine Insurance Company on a policy of insurance.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*Edward A. Rich,* for appellant.

*Rosenthal, Rosenthal & Rosenthal,* for appellee.

WIEST, J.   Defendant company insured plaintiff's automobile against "theft, robbery or pilferage, excepting by any person or persons in the assured's household or in the assured's service or employment, whether the theft, robbery or pilferage occur during hours of such service or employment or not."   Plaintiff loaned the car to one Jerry Monaghan, a former employee, for a half hour, to drive to the St. Dennis hotel in Detroit, and the car not being returned as agreed, he tried to locate it, and not being able to do so reported to the police that his car had been stolen.   Later in the day the car was found in a badly damaged condition at the corner of Grand River avenue and Fourth street in Detroit.   There was testimony that Monaghan drove the car to the hotel and there met some companions, started drinking, took his companions in the car and drove about the city and came back to the hotel and started drinking again and became so drunk that he was carried to his room. Monaghan testified that he left the car in front of the hotel and that he had the keys to the car in his pocket when he was taken to his room, but the keys were gone when he awakened and that he had not given the keys to any one, and had not given any one permission to take the car.   He testified that he

knew who took the car but would not tell their names. Plaintiff had the car repaired and brought this suit to recover the expense thereof and obtained judgment.

Defendant contends that plaintiff made no proof of loss in accordance with the terms of the policy, while plaintiff insists he was excused from doing so by the denial of liability by defendant's adjuster.

The policy provided:

"In the event of loss or damage the assured shall forthwith give notice thereof in writing to this company or the authorized agent who issued this policy."

Plaintiff testified:

"I notified the insurance company in writing of the car being stolen. * * * I had some discussion relative to the paying of this loss with Mr. Dinning, an adjuster for the St. Paul Fire & Marine Insurance Company, Leonard & Griffin, of whom I bought the insurance. A man from their office went over with me to see Mr. Dinning. I went up to Mr. Dinning's office and asked him what they were going to do about this car, and he said they were not going to do anything, that it wasn't a stolen car. I don't recall the date of this conversation, but it was within a few days after the accident. Mr. Dinning never saw the car to my knowledge, but he said there wasn't any claim at all, that the car wasn't a stolen car."

Defendant claims that the testimony failed to establish the agency of Mr. Dinning and cites *Fish* v. *Insurance Co.*, 198 Mich. 270. It is a sufficient answer to this to say that the notice to the agents who issued the policy to plaintiff made it unnecessary for him to go to an adjuster with his claim of loss, and when he did go to see the adjuster he was accompanied by a man from the office of defendant's agents and he had a right to consider, under such circumstances, the denial of his claim as excusing him from proving his loss.

It is also urged that there was no evidence tending

to prove a theft and that the car may have been taken without intent to steal it but with intent to return it, and it was upon plaintiff to offer evidence establishing an intent to steal the car on the part of the person taking it.

"It is true, as is contended, that an essential ingredient in the crime of larceny is the existence at the time of the taking of a felonious intent to deprive the owner of his property against his will, yet whether or not such an intent existed is a question for the determination of the court or jury trying the cause. If there is evidence from which such an intent can fairly be inferred, an appellate court is not authorized to disturb a finding that such an intent existed." *Robinson* v. *State,* 113 Ind. 510 (16 N. E. 184).

"The felonious intent was a question of fact for the jury, to be inferred by them from all the facts and circumstances disclosed by the testimony." *People* v. *Griffin,* 77 Mich. 585.

It was not incumbent upon plaintiff to negative conjectural defenses on the part of the person who took the automobile. It was sufficient for him to offer evidence from which the jury could reasonably infer a theft of the car.

We quote with approval, as the supreme court of New Jersey did in *State* v. *South,* 28 N. J. Law, 28 (75 Am. Dec. 250), the following statement of the law upon the question of intent found in a well-considered note by Judge Sharswood, in the case of *The Queen* v. *Holloway,* 1 Denison's C. C. 370, 376:

"It seems to be settled law that every wrongful taking, without any color of right, with intent to deprive the owner wholly of his property, is larceny, whatever other motive may also have influenced the taker; and that no wrongful taking will amount to larceny which is not done with such intent. The question for the jury in each case will be whether the facts prove such intent.

"If it appear that the prisoner kept the goods as his own until his apprehension, or that he gave them away,

or sold or exchanged or destroyed them, such intent may, generally speaking, be deemed proved. * * * If, on the other hand the prisoner took the goods with a view only to a. temporary user, intending to keep them for a short time only, and to return them to the owner unimpaired, an intent thereby wholly to deprive the owner cannot, generally speaking, be deemed proved. * * * But if he took them with a view only to a temporary user, intending, however, to keep them for a very unreasonable time, or to use them in a reckless, wanton or injurious manner, and then to leave it to mere chance whether the owner ever recovered them or no, and if he recovered them at all, would probably recover them in a damaged or altered condition, such a taking would seem, in common sense, to be ample evidence of an intent wholly to deprive the owner of his property."

In *State* v. *South, supra,* the court remarked:

"The fact of the taking being merely for temporary use seems, therefore, not of itself to be inconsistent with an intent wholly to deprive the owner of his property, and therefore does; not seem necessarily to negative the felony, but simply to be a piece of evidence which the jury may regard as showing a taking from wantonness, mistake, accident, frolic, or thievish design, according to circumstances."

Our attention is called by counsel for defendant to the case of *Hartford Fire Ins. Co.* v. *Wimbish,* 12 Ga. App. 712 (78 S. E. 265), and it is said that it is similar to the case at bar. It is. It affords, however, cold comfort to defendant for it was there held that the question of intent to steal should have. been submitted to the jury. Other cases cited require but brief mention.

In *Michigan Commercial Ins. Co.* v. *Wills,* 57 Ind. App. 256 (106 N. E. 725), the testimony affirmatively showed that the car was taken by a boy for a "joy ride" and without intent to steal. The same is true, in effect, of *Valley Mercantile Co.* v. *Insurance Co.,* 49 Mont. 430 (143 Pac. 559, L. R. A. 1915B, 327, Ann.

Cas. 1916A, 1126).   In *Rush* v. *Insurance Co.*, 150 N. Y. Supp. 457, the car was taken under claim of title. In *Stuht* v. *Insurance Co.*, 90 Wash. 576 (156 Pac. 557), the car was misused by one having lawful possession.   The question of intent to steal was submitted to the jury under proper instructions, and under the evidence cannot be disturbed.

We find no error, and the judgment is affirmed, with costs to plaintiff.

FELLOWS, C. J., and CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.