## MILLER v. NEWARK FIRE INS. CO. OF NEW JERSEY

___

(December 16, 1929. Opinion and Decree.)
(January 13, 1930. Rehearing Refused.)
(March 10, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

___

William A. Green and Herbert W. Kaiser, of New Orleans, attorneys for plaintiff, appellee.

John C. Hollingsworth, of New Orleans, attorney for defendant, appellant.

JANVIER, J. Plaintiff was the owner of a new Nash sedan automobile. He had obtained from defendant a policy of insurance under which the defendant company agreed to indemnify him against loss resulting from certain perils, including "theft, robbery or pilferage." At about 10:30 o'clock of the night of the loss which resulted in this suit, the car had been placed by plaintiff in a public garage operated by Simon & Zeller. At the time the car was left, it was placed in the space allotted to. plaintiff by the proprietors and the keys were left either in the car or were handed to Arnold Jackson, a colored employee of the garage owners, who was in charge of the garage for the night.

At about 2:30 a. m. the car was taken out of the garage by Jackson and driven by him in the direction of Canal street for a distance of a few blocks, when it was wrecked as a result of colliding violently with a post, which it demolished, and then with a building. The wreckage was traded in on a new car, and in this suit plaintiff claims from his insurers the difference between the trade-in allowance on the old car and the price of the new one. There is no controversy over the amount claimed, but defendant resists payment on the ground that the car was not injured as the result of theft, pilferage, or robbery. It bases this theory on two contentions: One that the negro was not attempting to steal the car, but was merely "borrowing" it temporarily, intending to return it to the garage; and the other that, since the negro had come into possession of the car with the knowledge and consent of the owner, who had himself placed it with the negro, there could have been no theft, pilferage, or robbery, as a fundamental essential to each of the three crimes mentioned is the unlawful taking possession.

We will first discuss this second contention. It is true that the car was voluntarily left by the owner in the garage and in the custody of the negro. But to leave an article in the custody of a person is far different from leaving it in his possession. The evidence shows that the car was placed in its assigned spot, and that, so far as the interests of the garage owners were concerned, there was no reason for it to be even touched by the negro. His duties were confined to watching it, to guarding it. Surely a person who merely guards something has not possession of it

in a legal sense, though he may have custody of it. Suppose a night watchman is employed to watch a residence and during the night he is tempted to remove from the residence some article, such as porch furniture. Can it be said that he has not committed theft because the article was left in his possession? We think not.

But, says defendant, he did not intend to steal the car, but was only borrowing it temporarily, and therefore the owner cannot recover under his "theft" policy. What the negro's intention was is entirely a question of fact.

"It is true, as is contended, that an essential ingredient in the crime of larceny is the existence, at the time of the taking of a felonious intent to deprive the owner of his property against his will; yet whether or not such an intent existed is a question for the determination of the court or jury trying the cause. If there is evidence from which such an intent can fairly be inferred, an appellate court is not authorized to disturb a finding that such an intent existed." Robinson vs. State, 113 Ind. 510, 16 N. E. 184, 185.

Apparently the trial court came to the conclusion that he did not intend to return it. The evidence' as to the circumstances amply justifies such a conclusion. If the negro merely wished to go for a cup of coffee, as counsel for defendant suggests, in all probability he would have "borrowed" a car more readily accessible than this particular car, which could only be taken out after removing several others which were in front of it. Furthermore, it is shown that the negro had in his pocket, at the time of his arrest later, money belonging to his employers, and then, too, it appears that he had been working for Simon & Zeller for only a very short time. But, whatever may have been the undis-

closed intention of the negro, it is certain that, up to the time of the accident, there was nothing in his actions to indicate any purpose other than to unlawfully take the car and remove it as far as possible from the place in which it was his duty to keep it.

Defendant cites interesting authority to the effect that the unlawful use by a garage man of a car left in his custody is not theft, or larceny. Van Vechten vs. American Eagle Fire Ins. Co., 239 N. Y. 303, 146 N. E. 432, 38 A. L. R. 1115. This doctrine appears sound, and if the record warranted us in finding that the negro intended to return the car, the case mentioned would be applicable. The facts, however, do not justify such a conclusion, particularly in view of the finding of the trial court to the contrary. The Van Vechten case holds that, in determining what is theft within the meaning of a policy of this kind, courts should accept the usual lay meaning of the term. In the state of New York a special statute declared that it was larceny for a garage owner to use the car of a customer, and it was sought to hold an insurance company liable under a theft policy in such a case. It was contended that, since the taking out of the car by the garage owner was made by statute a larceny the owner could recover under a theft policy. The court held that the usual meaning of the word "theft" should be applied in cases of this kind, and that inasmuch as in the particular case, it was the intention of the garage owner to return it, as in fact he did later return the wreckage, there was no intent to deprive the owner of his property, and therefore there existed no such theft as is usually contemplated by the word. This case and many others cited are interesting but do not appear to us to be in point.

Defendant further contends that plaintiff in leaving the car unlocked, or in leaving the keys with Jackson, breached the special warranty in the policy to the effect that the car would be equipped with a transmission locking device and that he would use "all diligence and care in maintaining the efficiency of said locking device, and in locking the automobile when leaving same unattended." It seems to us that such a warranty was not intended to apply in 'a situation of this kind. The car was not unattended, and it is necessary, in public garages, that keys be left in the cars, as they must on occasion be moved from place to place, ·to accommodate other cars. Then, too, the warranty was intended to apply only in the case of theft by persons having no right either to the possession or to the custody of the car, and it would be most unreasonable to so consider the warranty as to prevent the owner from leaving his car in a public garage unless locked and unless the keys were removed by him. Such a ruling would be tantamount to holding that in such a case the car could not be placed in any of the modern garages, for it is a matter of common knowledge that such garages will not accept a car unless the keys are left in it and that this particular garage so requires is in evidence.

Plaintiff also filed suit against the garage owners, and in the case now before us the judgment in his favor against the defendants also included a judgment declaring that the· defendant insurance company is entitled to be subrogated to plaintiff's rights against the garage owners in the other suit. This holding was manifestly correct.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is affirmed.