41259. HARTFORD FIRE INSURANCE COMPANY
v. LEWIS.

ARGUED APRIL 6, 1965—DECIDED MAY 25, 1965—
REHEARING DENIED JUNE 21, 1965.

*Harris, Russell & Watkins, H. D. Russell, W. B. Mitchell,* for plaintiff in error.

*Harold G. Clarke,* contra.

NICHOLS, Presiding Judge. 1. The evidence showed that the

plaintiff had purchased the automobile in question from a used car dealer who had in turn purchased it from another dealer at an auction. The selling dealer at the auction had purchased the automobile from Don McCullagh Leasing Company under an oral agreement whereby title was to remain in the seller until the purchaser's check cleared the bank (the title was attached to such check and was to be delivered to the purchaser when the check was paid). Shortly after the above transaction took place an employee or agent of Don McCullagh Leasing Company went to Toccoa, Ga., where the original purchaser was located, to either repossess the automobile or collect the purchase price. When he found that the original purchaser did not have the necessary funds to pay for the automobile and that it had been sold, he found out the identity of the ultimate purchaser, the plaintiff, and without contacting the plaintiff personally he removed the automobile from the plaintiff's premises at 3:30 a.m., with keys he made before leaving Detroit, and drove the automobile back to Detroit. The agent or employee of Don McCullagh Leasing Company testified for the defendant insurance company by deposition, and on cross examination testified that he found out from the county records and from information obtained from "Western Auto" the identity of the purchaser of the automobile, that he contacted the police but did not tell them his purpose, that he went by the plaintiff's home in daylight hours but did not attempt to contact the plaintiff personally and that he waited until 3:30 a.m., when everyone was sleeping, to pick up the automobile so that he could get it with "as least problems as possible," that he wanted to obtain possession peacefully.

In *South Carolina Ins. Co. v. Jackson,* 103 Ga. App. 3 (117 SE2d 878), relied upon by the insurance company, it was held that where property is taken under a fair claim of right it is not larceny. In that case the "taker" placed the property taken on his front yard a block from the place where it was taken in "plain view." In support of such decision, cases were cited where the taker "seemed to desire it to be known and observed by all men" that he had the property.

In the case sub judice the "taker seemed to desire that no man see him take the property and that no one know who took

the property," the very opposite from the situation in cases relied upon by the insurance company. The evidence authorized the verdict finding that the automobile was stolen within the terms of the policy. Accordingly, the trial court did not err in overruling the usual general grounds of the defendant's motion for new trial. Special ground 1, being a mere amplification of the usual general grounds, was likewise properly overruled.

2. Error is assigned upon the charge authorizing the jury to consider whether the insurance company had been guilty of the bad faith referred to in *Code Ann.* § 56-1206 so as to authorize the award of attorney's fees and penalty.

The defendant insurance company relies upon cases holding that if the question of liability is a close one, the courts, for the furtherance of justice should see to it that verdicts which illegally carry a penalty for bad faith are not allowed to stand. While, under such circumstances, where the question of liability is close or the facts are in dispute, so that the insurer has reasonable grounds to contest the claim, no penalty should be permitted, yet where as here the automobile was taken in the early hours of the morning by one who admitted that he purposely waited until everyone was asleep so that he could take the car with keys he had made before coming to Georgia, and the automobile was immediately, under cover of night, taken from the State of Georgia, the evidence authorized the jury to consider whether the refusal to pay was in bad faith notwithstanding the insurer's claim that the automobile was taken under a claim of right. The jury was authorized to find that the circumstances of the taking spoke louder than the taker's words as to his intent, and that the insurer had no reasonable or probable cause to believe that the automobile was not in fact stolen. The trial court did not err in overruling special ground 2 of the amended motion for new trial.

3. The sole remaining special ground of the amended motion for new trial complains of an excerpt from the court's charge which, when considered with the entire charge, shows no reversible error.

The trial court did not err in overruling the defendant's motion for new trial for any reason assigned.

*Judgment affirmed. Felton, C. J., Frankum, Russell and Pan-*

4

*nell, JJ., concur. Jordan and Hall, JJ., concur as to Divisions 1 and 3 only. Bell, P. J., and Eberhardt, J., dissent.*

JORDAN, Judge, concurring specially. 1. The dissenting opinion in effect says that a person who "thinks" or is "advised" that he has title to personal property may summarily recover it where found, under any conditions and circumstances, he being protected because he is acting under a "claim of right." I think this conclusion is error under the facts of this case.

In this case the car was located in the possession of an innocent purchaser for value, the car having been sold to him through regular channels of trade. Such was known to the agent of McCullagh, who must know under such circumstances that the plaintiff would *also* have a claim to title. Indeed it must be assumed that he knew that the sale of the car to the plaintiff under the facts of this case divested his principal of title thereto. *Cook Motor Co. v. Richardson*, 103 Ga. App. 129 (118 SE2d 502) and authorities therein cited. With such knowledge, and abandoning the legal remedy available to test the title, McCullagh's agent chose instead to steal upon the plaintiff's premises under the cloak of darkness in the early morning hours and drive the car away. All the elements of theft were thus present, including the intent to deprive plaintiff of possession of his property. By taking the car in this manner, the agent waived any bona fide claim of right his principal might have had and in effect "took the law in his own hands."

The dissent states that the result reached therein "does not leave the plaintiff without remedy," and that if he in fact has title to the car he can institute that proper action to recover it or its value. If such be true, can he abandon his legal remedy, proceed to Michigan and take the car under the circumstances whereby it was taken from him? I think not, though the dissent approved such action on the part of McCullagh's agent because he was acting under a "claim of right."

It is not a requirement under the policy that the plaintiff show a conviction for larceny before he can recover under the theft coverage. He was insuring himself against someone illegally and unlawfully taking his property from him, as was done in this case, and his right to recover would not be defeated even if the person so taking were acquitted of a charge of larceny.

2. I agree with Division 2 of the dissent dealing with penalty and attorney's fees. The facts here are certainly such that reasonable minds might differ as to whether there was coverage, and under such conditions the insurance company must be free to make a defense.

I would affirm on condition that the penalty and attorney's fees be written off, otherwise reverse.

EBERHARDT, Judge, dissenting. If, agreeably to the law as I find and understand it to be, we could join in the affirming of this judgment we would do so. Our sympathies are with the insured who, for reasons not attributable to himself, lost an automobile which he felt quite confidently was insured under a theft policy issued to him by Hartford Fire Insurance Company. The facts make a strong moral case for the plaintiff, but this is a court of law and not of morals. The question, then, is whether the loss of the car, under the circumstances shown, was a "theft" within the terms of the policy. If it was, recovery for the value of the car was proper, but if not it was not within the coverage of the contract and no recovery was authorized.

1. What is a theft, within the meaning of the policy? What are the essential ingredients? What must be shown by the insured, and what may appear in defense? "Where a policy of insurance indemnifies an owner of an automobile against loss or damage occasioned 'by theft, robbery or pilferage,' the owner can not under this clause of the policy recover for damage to a machine which had been taken by another and used without the consent of the owner, but without any intent to steal. At common law, and under the statutes of this State, 'theft' is synonymous with 'larceny.' The word 'robbery' as used in the contract sued on, should be given the meaning set forth in the Penal Code of this State. 'Pilferage' is petty larceny. The intent to steal is a necessary ingredient in all three offenses." *Hartford Fire Ins. Co. v. Wimbish*, 12 Ga. App. 712 (78 SE 265). To the same effect is *South Carolina Ins. Co. v. Jackson*, 103 Ga. App. 3, 6 (117 SE2d 878), and see *Gunn v. Globe &c. Fire Ins. Co.*, 24 Ga. App. 615 (101 SE 691). "The rule in the great majority of states may be stated in this manner. To warrant a recovery on a policy insuring an automobile against theft there must be more than a wrongful taking; the taking must be with

*the intent to steal."* Rainville v. Farm Bureau Mut. Auto. Ins. Co., 117 Vt. 37 (83 A2d 599). In an exhaustive annotation on the subject in 48 ALR2d 8, 21, it is stated editorially that "Automobile theft insurance is universally viewed as furnishing protection only against losses arising from criminal takings of the insured vehicle. Consequently, it is held that there can be no recovery under such a policy for a loss asserted to amount to a theft in the absence of proof of the existence of a felonious intent on the part of the taker." Cases supporting this rule are cited from thirty-three of the States, including the State of Michigan, where the Don McCullagh Leasing, Inc., which sold the automobile to Oren Hill of Toccoa, Ga. (holding the title documents and attaching them to Hill's check as security for its payment) was domiciled, see Bird v. St. Paul Fire & Marine Ins. Co., 218 Mich. 266 (187 NW 265); the State of Ohio, where the vehicle was physically located when the sale was made to Hill, see Great American Mut. Ind. Co. v. Meyer, 18 Ohio App. 97; and the State of Georgia, where the insured acquired the vehicle and subsequently lost it in the manner shown by the evidence, see *Hartford Fire Ins. Co. v. Wimbish,* 12 Ga. App. 712, supra.

On the question of the necessity for showing the felonious intent as an essential ingredient of the offense of theft or simple larceny, see *Code* § 26-2602; *Lee v. State,* 102 Ga. 221, 223 (29 SE 264); *Nightengale v. State,* 94 Ga. 395 (3) (21 SE 221); *Musgrove v. State,* 5 Ga. App. 467 (1) (63 SE 538); *Wright v. State,* 18 Ga. App. 337 (89 SE 432).

Now what were the circumstances of the taking, as shown by the plaintiff's evidence? After purchasing the car from Oren Hill through the Macon Auto Auction, Luther Wright, a used car dealer at Forsyth, sold it to the plaintiff, Harold Lewis. Lewis borrowed money from a bank with which he paid Wright for the car and secured a theft insurance policy on it from Hartford. The car was purchased in July, 1963 and some 19 or 20 days later, on the morning of August 10, he found that it had been taken from his carport where it had been parked the day before. He had no idea as to why it had disappeared or who had taken it, and the matter was reported to the police, the sheriff and later to Hartford. It was a 1962 Chevrolet sedan.

In the car had been a child's car seat, a flashlight and some small tools, such as a screwdriver, none of which had been recovered or returned to him. With that proof he made a prima facie case giving rise to an *inference* that whoever took the car did so with an intent to steal it and shifted the burden to the defendant to show the absence of any intent to steal on the part of the taker. *Staten v. General Exchange Ins. Corp.*, 38 Ga. App. 415 (144 SE 53).

The defendant's evidence disclosed that in July, 1963 the car was owned by Don McCullagh Leasing, Inc. of Detroit, Michigan, but was physically located at the place of business of Jim Connell Chevrolet Company in Cleveland, Ohio. Oren Hill, who operated Oren Hill Motors, Inc. of Toccoa, Ga., saw the car at Connell's place and wanted to buy it. He finally offered $1,800 and by telephone negotiations with Don McCullagh Leasing in Detroit, Connell was authorized to sell for cash, or to accept Hill's check to which the title to the car would be attached when sent to Detroit for deposit—to be delivered only upon payment of the check. Hill gave his check, took the car and returned to Toccoa and thereupon took it to Macon Auto Auction where it was sold to Wright. When Hill's check with the title attached was returned by the bank unpaid, Mr. Kellar, the credit manager of Don McCullagh Leasing, sought advice from its legal counsel as to what should be done. The attorney, Thomas W. McDonnell, testified that he advised Kellar that under the law of Michigan the title to and ownership of the car remained in Don McCullagh Leasing and that he should go to Georgia *"and try and find the car and peaceably bring it back to Michigan."* Kellar testified that pursuant to this legal advice he went by plane to Atlanta, then by bus to Toccoa, where he saw Oren Hill and demanded of him the money on the check or the car. Hill told him he had no money and that the car had been sold through the auction to Wright, who was located at Forsyth. Kellar went then to Macon, and, confirming the facts as to the sale to Wright, went to Forsyth and learned that Wright had sold it to somebody. He sought, without success, information from the police as to where he might find the car, but from the local tag agent he learned that Harold Lewis had recently bought a tag for the car. Checking the motor or serial number on the tag records he ascertained that it was the same

8

vehicle described in the title documents of Don McCullagh Leasing, which he had with him. It was about one o'clock in the afternoon when he had obtained that information. He then ascertained where Lewis lived and twice during the afternoon went by, seeing the car parked in the carport. He waited until about 3:30 a.m. the next morning before attempting to repossess the car, then went back to Lewis' home, verified the serial number on the door post as being the same as that in the title documents, and drove it away with a key that he had brought with him from Detroit. As to why he waited until that hour of the night to get the car he testified that *"I wanted to have as least [sic] problems as possible. I wanted to obtain possession peacefully."* He admitted that there had been a child's car seat, perhaps a flashlight and a screwdriver or something of that sort in the car and did not recall whether they had been returned. He left no word with the police or anybody as to his taking of the car, nor had he disclosed to the police the object of his inquiry when he sought information as to its location.

That a reliance upon the advice of counsel to the effect that one has a right to take the vehicle negatives any intent to steal has been held in Bigus v. Pacific Coast Casualty Co., 145 Mo. App. 170 (129 SW 982), and in Rush v. Boston Ins. Co., 150 NYS 457. The title outstanding on the vehicle when it was sold to Hill was a Michigan title, issued to Don McCullagh Leasing, Inc. under the statutes of that State. See Mich. Stat. Ann. §§ 9.1933 et seq. The Supreme Court of that State has held that even where the purchaser has paid for the vehicle but has received no certificate of title required by the statute, the dealer is still the owner, Endres v. Mara-Rickenbacker Co., 243 Mich. 5 (219 NW 719), and until there is delivery of the assigned certificate of title to a used car, title does not pass and no sale is effected, Schomberg v. Bayly, 259 Mich. 135 (242 NW 866), for transfer of title simply cannot be effected without compliance with the statute.[1] Drettmann v.

---

[1]This appears to be the situation in all States where the uniform Motor Vehicle Title Certificate Law has been adopted. See 37 Mich. L.R. 758. There can be no authority, "apparent" or otherwise, to sell or transfer title to any vehicle subject to its terms except by a transfer of the title certificate.

Marchand, 337 Mich. 1 (59 NW2d 56). Incidentally, the same situation obtained under the law of Ohio where the car was physically located. See Page's Ohio Rev. Code Ann. § 4505.04; Brewer v. De Cant, 167 Ohio St. 411 (149 NE2d 166). The same is true of the law in Georgia as to vehicles subject to the provisions of the Motor Vehicle Certificate of Title Act of 1961. See *Code Ann.* § 68-415 (a); *Wreyford v. Peoples Loan &c. Corp.,* 111 Ga. App. 221 (141 SE2d 216). The Governor, or his designees, is authorized to negotiate reciprocal agreements with other States whereby titles issued under their title certificate laws will be recognized in Georgia and vice versa. *Code Ann.* § 68-1001. Whether this was accomplished with Michigan does not appear from this record. But in any event, the Motor Vehicle Title Certificate Act of 1961 specifically applies only to 1963 and subsequent model vehicles. *Code Ann.* § 68-406a. The vehicle here involved was a 1962 model.

It must be obvious that in giving the advice that title and ownership remained in Don McCullagh Leasing the attorney had some basis for his opinion and the credit manager, Kellar, who came to Georgia to get the car, had basis for relying upon it. If in fact the title and ownership did remain in Don McCullagh Leasing, it follows as a matter of law that there could have been no intent to steal on Kellar's part when he took it, for one can have no intent to steal that to which he has title and right of possession. *Walker v. State,* 86 Ga. App. 875, 879 (72 SE2d 774). Kellar was acting, of course, for the corporation—his employer, and as soon as he got back to Detroit with the car delivered it over to it. It does not appear whether the attorney may have been in possession of information which would indicate that Hill obtained possession of the car by artifice, trick or fraud of a kind amounting to larceny so that title did not pass to him under *C. L. Fain Co. v. Baltimore Ins. Co.,* 81 Ga. App. 105 (57 SE2d 879), *Hewitt v. Malone,* 105 Ga. App. 281 (124 SE2d 501) and *Winton v. Butler,* 53 Ga. App. 696 (186 SE 773). See *Douglas Motor Sales, Inc. v. Romy Hammes Corp.,* 102 Ga. App. 536 (117 SE2d 224).

But even if the attorney was mistaken in his advice that title and ownership remained in Don McCullagh Leasing and it should appear that title in fact passed to Wright when Hill sold

the car at the auction, under *Capital Automobile Co. v. Ward,* 54 Ga. App. 873 (189 SE 713), *Gouldman-Taber Pontiac, Inc. v. Thomas,* 96 Ga. App. 279 (99 SE2d 711), and *Cook Motor Co. v. Richardson,* 103 Ga. App. 129 (118 SE2d 502), the element of intent to steal, or animus furandi, is nevertheless absent, for Kellar took the car under a *claim of right.* "To take another's property under a bona fide claim of right is a trespass; but it is not larceny, however unfounded the claim may be in law." *Lee v. State,* 102 Ga. 221, 224, supra. "Even though the claim of the taker is unfounded, he is not guilty of larceny due to the lack of felonious intent." *South Carolina Ins. Co. v. Jackson,* 103 Ga. App. 3, 5, supra. "Where one takes property under a fair claim of right, it is not larceny." *Causey v. State,* 79 Ga. 564 (5 SE 121, 11 ASR 447). And see *Newton Mfg. Co. v. White,* 63 Ga. 697, 702 (3).

Even if the circumstances under which he obtained the car had been unknown, since it was delivered back to Don McCullagh Leasing which accepted, took and continued to hold it under the Michigan title, no intent to steal could be imputed. *Reece v. Motors Ins. Corp.,* 116 FSupp. 394. Where a vehicle was taken by a mortgagee in violation of an agreement to extend the time for bringing the payments to a current status and without the knowledge of the mortgagor, no intent to steal could be imputed. *Tallasek v. Travelers Fire Ins. Co.,* 242 F2d 748. If there was a substantial question about the true ownership of the automobile any theory of intent to steal is undermined. *State Assur. Underwriters &c. Co. v. Miller,* (Fla.), 58 S2d 532. "In all thefts the taking must be a fraudulent taking, and if there is a question of title or a claim of title, which is not fabricated, the taking would amount to a mere trespass." *Darnell v. State,* 43 Tex. Cr. R. 86 (63 SW 631). "[W]here property is taken under a claim of right if the prisoner appears to have had any fair color of title, or if the title of the prosecutor be brought into doubt at all, it will be the duty of the court to direct an acquittal; such a case involving a mere trespass." *Burnaman v. State,* 130 Tex. Cr. R. 355 (94 SW2d 751).

I certainly do not approve of the method used in obtaining possession, but the rule is not changed by the fact that an artifice may have been pursued if the car was taken under a claim of

right. "Whether it was the legal owner or not, and however highhanded and reprehensible may have been its conduct in repossessing the automobile without process, it seems to us too clear to warrant discussion that such conduct . . . did not amount to 'theft, larceny, robbery or pilferage.'" Talasek v. Travelers Fire Ins. Co., 242 F2d 748, supra.

Textwriters support this view. "Neither does such a policy cover the situation where a former owner takes possession of the insured car under a claim of right, nor one where the insured is deprived of the insured car by one who is honestly under the impression that he is entitled to its possession, although he uses a trick or device to obtain it, the felonious intent essential to liability being absent in such a case." 6 Blashfield, Cyc. of Automobile Law 314, § 3711. To the same effect are 5 Appleman, Insurance Law and Practice 356, § 3211, 5 Couch, Cyc. of Ins. Law 4203, § 1176a, and 13-14 Huddy, Encyc. Auto Ins. Law, § 345.

The inference of an intent to steal arose altogether from circumstances which were explained by direct, uncontradicted evidence. The taking of the car at night and without process was because Kellar wished to obtain possession peaceably—as he had been instructed by the attorney to do. It was done pursuant to legal advice and in reliance upon the Michigan title of Don McCullagh Leasing, which certainly was not fabricated. The position and advice of counsel was grounded upon the Michigan law and, as to that, was sound and correct. It may have been sound under the law of Georgia. All of this, as I view it, demands a finding that there was no intent to steal, absent which no recovery under the policy can stand. "This may be a hard contract, but the parties have made it themselves, and there is no reason in law or morals why they should not be bound by it. The plaintiff was not obliged to accept the policy in the form in which it was offered; [he] might possibly have procured more liberal insurance elsewhere; but in any event the courts are not at liberty to extend by construction the plain and well-understood meaning of language used in the contract." *Hartford Fire Ins. Co. v. Wimbish*, 12 Ga. App. 712, 714, supra.

It should be noted that this result does not leave the plaintiff without remedy. If, as is contended by Don McCullagh Leas-

ing, the title never passed from it, he has his action against Wright on a breach of the warranty of title and Wright, in turn, has his remedy under the title insurance that was procured in connection with the sale at the auction. If, on the other hand, title did pass to Wright when the car was sold at the auction it remains in plaintiff and he may replevy it from Don McCullagh Leasing or whoever is in possession, and Don McCullagh Leasing is liable to him for the trespass. If title passed to Wright at the auction sale it passed out of Don McCullagh Leasing because it had placed Hill in possession with apparent authority to sell. Title can vest in one place only. It did not result, as has been suggested, in two titles outstanding. If title went into Wright at the sale it had to come from somewhere, and could come only from Don McCullagh Leasing.

2. In my view of the matter the whole verdict falls. But if the majority of the court disagrees it seems inevitable that the portion for penalty and attorney's fees must fall. "A defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company as effectually as would a complete defense to the action." *Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 765 (12 SE 18). Certainly the defense made in this case meets that standard. It is not essential that the company win on the basis of the defense made; if so it would defend at its peril in every instance and suffer penalty in the event of losing, no matter how reasonable the defense. "Any rule or principle which would deny to the company the right of full and free litigation," is wrong. *Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 815, supra. It is sufficient if the defense presents a reasonable and probable cause or basis for refusing payment. That a loss is not within the coverage of the policy is a reasonable cause, and if there is reasonable basis for concluding non-coverage, or if, under the facts shown, reasonable minds might differ as to whether there was coverage the company must be free to make the defense. *Interstate Life &c. Ins. Co. v. Williamson*, 220 Ga. 323 (138 SE2d 668).

It is beyond any peradventure that under the facts in this case there was at least a jury question presented as to whether an intent to steal was shown. "The question of intent should have been submitted to the jury," even where it did not appear that

the vehicle was taken under either title or claim of right. *Hart-ford Fire Ins. Co. v. Wimbish,* 12 Ga. App. 712, 714, supra. And see Miller v. Newark Fire Ins. Co., 12 La. App. 315 (125 S 150). "[W]hether or not the hogs were the property of the son, or whether, if they were in fact the property of the prosecutor, they were taken feloniously, or under a fair and honest claim of right, were questions for the jury. . ." *Lee v. State,* 102 Ga. 221, 224, supra. And see *Gordon v. State,* 54 Ga. App. 337 (187 SE 849).

Even if it be said that a verdict was *authorized* for the plaintiff, it cannot be gainsaid that one was likewise *authorized* for the defendant. If the jury had returned a verdict for the defendant under these facts, most surely we would affirm it. "[I]t is sufficient to say that the evidence did not demand a finding for either party, but, in fact, would have authorized the jury to find either for the plaintiff or the defendant. In these circumstances . . . it was not sufficient to authorize a finding of bad faith and the award of damages and attorneys' fees. *Georgia Life Ins. Co. v. McCranie,* 12 Ga. App. 855, 861 (3) (78 SE 1115); *Southern Ins. Co. v. Ray,* 40 Ga. App. 262 (149 SE 304); *Guaranty Life Ins. Co. v. Martin,* 44 Ga. App. 545 (2) (162 SE 288); *Royal Ins. Co. v. Cohen,* 105 Ga. App. 746 (3) (125 SE2d 709)." *American Cas. Co. v. Seckinger,* 108 Ga. App. 262 (5) (132 SE2d 794). "The jury are not authorized to find that the refusal to pay was in bad faith merely because in their opinion the company ought to have paid the claim." *Georgia Life Ins. Co. v. McCranie,* 12 Ga. App. 855, 861, supra. "It has also long been established as the rule that the *complete failure* of the insurer to prove *any defense* to an action on the policy is evidence of bad faith contemplated by *Code* § 56-706 [now *Code Ann.* § 56-1206]." *Reserve Life Ins. Co. v. Ayers,* 217 Ga. 206, 213 (121 SE2d 649) (Emphasis supplied).

That following the filing of a proof of loss by Lewis negotiations were entered into between him and the adjuster for Hartford looking to a settlement of the claim and which almost culminated in a settlement prior to the time when Hartford concluded that there was no coverage and refused settlement on that ground does not alter the situation, for "the faith of the insurer should be judged by the case made at the trial." *Inter-*

*state Life &c. Ins. Co. v. Williamson*, 220 Ga. 323, 326, supra.
· By holding, as they do, that the evidence merely *authorized*
the jury to find that the automobile was stolen, the majority
opinion necessarily concedes that reasonable minds could differ
on this question; yet, at the same time they would refuse the
insurer the right to go to the jury on this very question. They
penalize it for doing so!

The burden is on the insured to show that the refusal to pay
was in bad faith, *Life & Cas. Ins. Co. v. Freemon*, 80 Ga. App.
443 (c) (56 SE2d 303), that the refusal was unfounded in law
or in fact and of a frivolous nature. *Royal Ins. Co. v. Cohen*,
105 Ga. App. 746, 747, supra. That burden was not carried in
this case. The charge of bad faith cast no burden on the de-
fendant to show good faith, *Interstate Life &c. Ins. Co. v. Wil-
liamson*, 220 Ga. 323, 326, supra, though it was amply demon-
strated by defendant's evidence.

It is beyond our understanding how those of our brothers in
the majority opinion who give approval to the award of penalty
and attorney's fees can so cavalierly ignore the cases cited in this
division of our dissent. We can only conclude that the task of
distinguishing is too much for them and that any suggestion of
overruling is forestalled by the decisions of the Supreme Court.

Bell, P. J., concurs in this dissent; Jordan and Hall, JJ., con-
cur in the second division of it.

ON MOTION FOR REHEARING.

NICHOLS, Presiding Judge. The insurance company, in its mo-
tion for rehearing, strongly urges that the testimony of the per-
son taking the automobile as to his *intent* "not to steal" it,
together with the advice he obtained from his employer's attor-
ney as to the title to such automobile *demanded* a finding that
there was no *intent* to steal and therefore no *theft* under the
provisions of the insurance contract.

The testimony of the employee of Don McCullagh Leasing
Company as to his good faith (intent) was admissible, but as
was held in *Royce & Co. v. Gazan*, 76 Ga. 79 (5): "A party may
testify as to his intention. It is evidence to be considered, but
the facts—all the facts—are to be considered, to arrive at the
truth respecting his real motive." See also *Childers v. Ackerman
Constr. Co.*, 211 Ga. 350, 354 (86 SE2d 227), and citations. "It

is well settled that circumstantial evidence may sometimes outweigh positive testimony." *Minter v. Kent,* 62 Ga.App. 265, 272 (8 SE2d 109).

" 'A fact can be proved by circumstantial evidence as well as by direct proof, and physical facts and circumstances may be sufficient to authorize the jury to disbelieve the witnesses of a party and to thereby impeach them. *Atlantic & Birmingham R. Co. v. Clute,* 3 Ga. App. 508 (60 SE 277); *Emory University v. Bliss,* [35 Ga. App. 752, 134 SE 637] . . . *Central of Georgia R. Co. v. Grace,* 46 Ga. App. 101, 102 (166 SE 684). "Implications inconsistent with the testimony may arise from the proved facts; and in still other ways the question of what is the truth may remain as an issue of fact despite uncontradicted evidence in regard thereto." *Cooper v. Lumbermen's Mutual Casualty Co.,* 179 Ga. 256, 261 (175 SE 577).' *McRae v. Wilby,* 59 Ga. App. 401, 409 (1 SE2d 77)." *Hubbard v. Cofer,* 98 Ga. App. 565, 566 (106 SE2d 358). As was held by the Supreme Court in *Bowie & Co. v. Maddox & Goldsmith,* 29 Ga. 285, 287, circumstances can outweigh direct or positive testimony, and the direct or positive testimony may "break down under the weight of its own absurdity."

The jury was authorized to find that a witness who testifies that he waited until 3:30 a.m., to take an automobile without permission of the person in possession, without notifying the officers of the law (or anyone else) and that he immediately took it out of the State is patently telling an untruth when he says he did it in good faith.

The claim of title under Michigan law was not sufficient, as a matter of law, to exonerate the person taking the automobile under the above described circumstances. A similar argument was made, and rejected, in *Arthur v. State,* 146 Ga. 827, 831 (92 SE 637), where it was contended that a business lawful in another State could be carried on in violation of the laws of this State when done by an agent of the foreign company.

As stated in the original brief of the defendant insurance company, with reference to the title to such automobile in Georgia: "McCullagh Leasing had title against Hill [the dealer who originally purchased the automobile from McCullagh]. Lewis had title which he could assert against everyone." This does not

mean that two "titles" were outstanding, but as explained in *Georgia Cas. Co. v. McRitchie,* 45 Ga. App. 697, 702 (166 SE 49): "Where the vendee under a conditional sale wrongfully converts the property before discharging the purchase money note reserving title thereto, by selling it under circumstances such as would protect an innocent purchaser, the legal title does not really pass out of the vendor by reason of the vendee's wrongful act, although he cannot assert it as against the equity of the innocent purchaser." See also *Hogg v. Simmons,* 94 Ga. App. 83, 85 (93 SE2d 779), and citations. Under all the circumstances in the case the jury could have determined that the employee of Don McCullagh Leasing Company knew of the above law in Georgia, thus explaining his reasons for taking the automobile under the circumstances as shown above. Again, the circumstantial evidence can speak louder than the direct evidence.

The contention that the plaintiff could recover from Don Mc-Cullagh Leasing Company is not a proper defense since in every case where property is stolen, if located, it can be recovered in trover. The insured, in order to recover, must show the theft, but he is not required to show in addition that he cannot locate the thief or the whereabouts of the stolen property. Nor is the contention that the plaintiff could recover from the dealer from whom he purchased the automobile any defense, or any reason why the plaintiff should not recover, since the plaintiff obtained a title good against the world from such dealer. On what ground would he sue? To ask the question is to answer it.

*Motion for rehearing denied.*